### HENRY SIMON v. J. M. NANCE.

Decided March 13, 1907.

**1.—Land—Right to Lateral Support.**

The right of a landowner to lateral support by the soil of an adjoining proprietor is absolute, and not limited by a right of such proprietor to construct ditches, in reasonable use of his own land, to protect it from surface water.

**2.—Limitation—Damage Developing.**

Where the construction of a ditch by a landowner upon his own premises afterwards, by the washing of the soil, deprived the land of an adjoining proprietor of its lateral support, limitation ran, not from the time the ditch was dug, but from the time it inflicted the damage.

Appeal from the District Court of Hays County. Tried below before Hon. L. W. Moore.

*Will G. Barber* and *R. E. McKie,* for appellant.—Appellant had and has the absolute right to the lateral support of appellee's adjoining land; and if appellee digs a ditch up to the line, or so near that the action of the elements causes the soil to cave or slough, he is liable for damages resulting. I "Cyc.," 777; Gilmore v. Driscoll, 122 Mass., 199, 23 Am. Rep., 312; Mosier v. Oregon Co., 39 Ore., 256, 87 Am. St. Rep., 652; Keating v. Cincinnati, 38 Ohio St., 141, 43 Am. Rep., 421; Schultz v. Bower, 59 N. W. Rep., 631, 632; Mears v. Dole, 135 Mass., 508; Nading v. Denison Ry., 62 S. W. Rep., 97.

The right to repel surface water obtains only where it is so done as to not invade or interfere with any property right of another; and one may not throw such water through artificial channels where it otherwise would not go without becoming liable for any damage done thereby. Barnett v. Matagorda Rice Co., 98 Texas, 359; Gembler v. Echterhoff, 57 S. W. Rep., 313.

*B. G. Neighbors,* for appellee.—The act of appellee in digging a ditch and constructing a levee on his own land for the purpose of preventing the surface water flowing from off appellant's land over appellee's, inundating his crops and damaging his land, was a rightful exercise of dominion over his own property. Barnett v. Matagorda Rice Co., 98 Texas, 359, and authorities there cited.

Even had the court found that appellant had sustained damages by reason of the ditch and levee, still he would not have been entitled to a judgment for damages because appellant in his pleading failed to allege that appellee had been negligent in constructing the ditch. Moody v. McClelland, 39 Ala., 45; Panton v. Holland, 17 Johns., 92; Baltimore & P. Ry. Co. v. Reaney, 42 Md., 117; Shafer v. Wilson, 44 Md., 268.

KEY, ASSOCIATE JUSTICE.—This is an injunction suit seeking to have the defendant restrained from entering upon the plaintiff's land, tearing down his fence and digging a ditch thereon, and to require the defendant to fill up a ditch already dug, or build a retaining wall to prevent the ditch from sloughing off and encroaching upon the plaintiff's land. He also sought to recover damages on account of the ditch.

The defendant pleaded not guilty, two years' limitation as to damages and prescription as to the ditch. He also pleaded in reconvention for damages for suing out the writ of injunction. Upon trial judgment was rendered for the defendant as against the plaintiff's suit, and for the plaintiff as against the defendant's cross-action, and the plaintiff has appealed. The trial judge made findings of fact which are as follows:

"1. The plaintiff owns by title in fee simple the 200 acres of land described in his first amended original petition, and the defendant in like way a tract of land adjoining plaintiff's 200 acres on the southwestern side; they have a common line from northeast to southwest to the intersection with Plum Creek.

"2. On the 9th day of August, 1879, William Vaughan owned 100 acres of the 200 acres now owned by plaintiff, and the other 100 acres thereof was owned by his son, Felix Vaughan, and the defendant then owned the land which he now owns. On August 9, 1879, defendant and William Vaughan (acting for himself and Felix Vaughan) agreed upon a division line between them, which so far as it affects the present controversy, is described in their agreement as being 1655 varas northwest from the beginning corner of the M. A. Atkinson survey at the corner of a fence which is made thereby the division line between the two tracts; thence with said fence S. 45 degrees W. 1595 varas to the west prong of Plum Creek. That at that time there was a fence standing on said line, and at all times thereafter said fence was recognized as the true

division line between the defendant and the said William Vaughan and Felix Vaughan, and later the plaintiff.

"That Felix Vaughan acquired through his sister the 100 acres owned by William Vaughan at the time of said agreement, and Felix Vaughan conveyed the 200 acres to the plaintiff, and the plaintiff and those whose estate he has, for more than ten years have had the actual, adverse and exclusive possession of all land to that line and claiming same as their own adversely to all persons and the defendant has always acquiesced in and assented to that being the correct line.

"3., That during the year 1882 the defendant Nance cut a ditch on his side of the fence and within two or three feet thereof, said ditch being then about two feet deep and three or four feet wide, and as originally constructed, was altogether on the land of the defendant, Nance, and two to three feet from the said agreed line as so made by the fence. That the purpose of said ditch on the part of said Nance was to drain the surface water which would run upon his land from the land now owned by plaintiff and other land lying above and prevent same from running upon the land of Nance. That said ditch has been from time to time since that date deepened and widened, in part by the action of the water and the elements causing the land to slough off, and in part by the act of the defendant Nance, in having same deepened and widened. That when the plaintiff Simon bought the land from Felix Vaughan in 1896 there was little, if any, of the ditch then on his side of the line, and there was little, of any, thereof on his side of said line prior to the year 1902. That during said year 1902 there were heavy rains which caused the ground adjacent to said ditch to crumble and fall therein, and the same thing occurred in 1903, and in 1903, prior to the institution of this suit, the defendant Nance began working on the ditch, cutting down the sides to make them perpendicular, deepening the ditch and was so engaged at the time the injunction was sued out in this case.

"4. That while the original ditch was and is all on Nance's side of said line, it has now encroached in some places over on to Simon's side of the line, and other places is all yet on Nance's side. There being as much as the average of two feet of the whole ditch now on Simon's side, and if the ditch is allowed to remain as it is, the dirt will continue to slough therein to some extent from the Simon side thereof, as well as from the Nance side thereof.

"5. That the land of both the plaintiff and defendant is valuable, heavy, black land, devoted to agricultural purposes, and the natural drainage of the water is from the land of the plaintiff onto and across the land of the defendant. That the creek referred to as Plum Creek runs along the southwestern border of the tract of land of both the plaintiff and the defendant, and at a distance of some two to three hundred yards northeast of said creek there is a natural depression or valley of considerable width, which, as a natural drainway, in times of rain carries a large amount of water which falls upon the land of the plaintiff and upon other land above and around same draining thereto. The land between this valley drainway and Plum Creek is some higher than the creek or the valley. The purpose of the defendant Nance, in undertaking to dig and maintain the ditch is to divert the water which comes down that valley from running across his land, and carry same through the

ditch to Plum Creek. To aid in carrying same through the ditch, the said Nance has, from time to time erected a levee or dam on his own land across said valley, which dam has washed away at different times, but the one last erected since the institution of this suit is now standing.

"6. That the water which comes naturally down that valley is surface water and if not prevented from running upon the land of said Nance, washes away his soil and the crop which he may have growing thereon and inflicts great injury upon him and his land.

"7. That, while the maintaining of the ditch inflicts some injury upon the plaintiff, a much greater injury would be inflicted upon the defendant and his land by not permitting him to maintain said ditch.

"8. There is no proof made as to whether defendant could as well maintain the ditch at a point far enough away from the said division line so as not to interfere in any way with plaintiff's land by coming into same."

As conclusions of law, the trial judge held as follows:

"1. The court finds that the line above described is the true boundary line as between plaintiff and defendant, and the plaintiff owns the land up to said line upon the northeast side thereof, and the defendant owns the land to the line on the southeast side thereof.

"2. The court makes no finding of law upon the question of whether defendant acquired the right to maintain said ditch by limitation or prescription, since the court finds for the defendant upon another issue hereinafter shown.

"3. The court is of the opinion that the plaintiff's right to the lateral support of his land, and that he have same undisturbed by the defendant cutting the ditch, or the water and elements cutting same, is subordinate to the defendant's right to repel the surface water from his own land, and that the court's judgment must, therefore, be for the defendant.

"4. Insofar as the plaintiff contends that even if the court's next preceding conclusion of law is, generally speaking, correct, that before the defendant could assert the right to deprive plaintiff's land to right of lateral support by reason of the necessity to protect his own land from surface water, that defendant should first show that the ditch could not be put at any other place where plaintiff's rights would not be invaded, and the court holds that the burden of proof being on the plaintiff to make his case, and there being no proof upon that issue sufficient to support a finding either way, that the judgment should be for the defendant, and it will be so entered."

*Opinion.*—Counsel for appellant assail the trial court's third and fourth conclusions of law. By the weight of authority it is a well settled rule of the common law that an owner of land has an absolute right to the lateral support of adjoining land. In other words, he has the right to have his land remain as it was in a state of nature, and neither the adjoining land owner nor anyone else can rightfully remove from the boundaries of the land the supports which hold it in its natural position. Therefore if the adjoining proprietor constructs a ditch or other excavation in such a manner as causes the soil of the complainant to cave in, slough off or wash away, such adjoining proprietor is liable for damages, and, in a proper case, may be restrained by injunction. The right of

lateral support of the soil is absolute and does not depend upon the question of due care or negligence. However, this absolute right is limited to the soil itself, and does not apply to buildings or other structures which have been placed upon the land. When it is sought to recover damages to improvements which have been placed upon the land, then, as a general rule, the question of negligence becomes an important factor. (Gilmore v. Driscoll, 122 Mass., 199, 23 Am. Rep., 312; Mears v. Dole, 135 Mass., 508; Mosier v. Oregon Co., 39 Ore., 256, 87 Am. St. Rep., 652; Keating v. Cincinnati, 38 Ohio St., 141, 43 Am. Rep., 421; 1 Cyc., 777; 18 Am. & Eng. Ency. Law, 542.)

Hence we hold that the trial court fell into error when it held that the plaintiff's right to the lateral support of his land was subordinate to the defendant's right to repel the surface water from his land. The right to lateral support of the soil is absolute, and is not subordinate to any right of the adjoining proprietor. Such adjoining proprietor has the right, as held by our Supreme Court in Gross v. Lampasas, 74 Texas, 195, and Barnett v. Matagorda Rice & Irrigation Co., 98 Texas, 355, to repel surface water by throwing it off from his land, and upon the surface of adjoining land; but such right does not go to the extent of permitting him, by ditching or otherwise, to interfere with his neighbors's right to lateral support of his soil. The two Texas cases cited above are relied upon by appellee's counsel in support of the ruling of the trial court. Those cases, while dealing with the relative rights of adjoining land owners, are easily distinguishable from this case. In the Gross case it was held that the owner of a town lot had the right to construct a wall upon his line adjoining a street, and thereby repel the surface water from his property. In the Barnett case it was held that adjoining landowners had the right to construct irrigation ditches with embankments, although, as a result thereof, surface water, which otherwise would have passed off, was held upon the plaintiffs' land. The right to lateral support of the soil was not involved in either of the cases; nor was that right involved in Gembler v. Echterhoff, 57 S. W. Rep., 313, decided by the Court of Civil Appeals at San Antonio, and cited by appellant in this case. One of the highest and most essential rights of the ownership of land is the right to construct houses and other improvements thereon; and yet it is well settled that if in excavating for such purpose the lateral support of the soil of the adjoining proprietor is interfered with, he may maintain a suit on account of such interference. The right to divert surface water by making ditches, certainly, is not higher nor more important than the right to build houses and make other permanent improvements; and when, as a result of the construction of such a ditch, and in the ordinary course of events, the lateral support of the soil of an adjoining proprietor is interfered with the same legal consequences must be held to follow.

From this it follows that the case must be reversed, unless the plaintiff's cause of action was barred by the statute of limitations. The suit was filed July 31, 1903, and sought to recover for damages sustained within two years prior to that time. We are of opinion limitation ran only from the time the injury was done, and not from the time the ditch was originally constructed; and that the plaintiff's cause of action was not barred by limitation or prescription. (Smith v. Seattle, 51

Pac. Rep., 1059; Kansas City N. W. Ry. v. Schwake, 68 Law Rep. Ann., 673; 1 Cyc., 783.)

As the trial court made no finding upon the question of damages, this court is not in a position to finally dispose of the case. Therefore the judgment will be reversed and the cause remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*