In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00021-CR


______________________________




MICHAEL ANDREW BAIN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Criminal District Court No. 5


Dallas County, Texas


Trial Court No. F01-52564-L




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Ross



MEMORANDUM OPINION



 Michael Andrew Bain appeals from his conviction for the offense of theft. This is
one of six appeals brought by Bain from his convictions. He was convicted in a single,
consolidated trial, based on his guilty plea (without a plea agreement), to three indictments
for aggravated robbery of an elderly person, two indictments for robbery, and one
indictment for theft. A jury assessed his punishment at eighty-five years' imprisonment in
the aggravated robbery convictions, forty years' imprisonment for the robbery convictions,
and two years' confinement in a state jail facility for the theft conviction. The causes have
been appealed separately and have been briefed together. 

 Since the briefs and arguments raised therein are identical in all appeals, for the
reasons stated in Michael Andrew Bain v. The State of Texas, No. 06-02-00017-CR, we
likewise resolve the issues in this appeal in favor of the State.

 We affirm the judgment of the trial court.


 Donald R. Ross

 Justice


Date Submitted: June 18, 2003

Date Decided: July 1, 2003


Do Not Publish



="false" Priority="9" SemiHidden="false"
 UnhideWhenUsed="false" QFormat="true" Name="heading 1"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00134-CV

                                                ______________________________

 

 

                                           RAY BRAXTON,
Appellant

 

                                                                V.

 

                                          CHIN TUO CHEN, Appellee

 

 

                                                                                                  


 

 

                                           On Appeal from the County
Court at Law 2

                                                             Gregg County, Texas

                                                   Trial Court No. 2009-1321-CCL2

 

                                                         
                                         

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            Adjoining
landowners Ray Braxton and Chin Tuo Chen do not see
eye to eye.  In part, that is because the
level portion of Chens land lies between twenty-five and thirty feet lower
than Braxtons land, and Chen has removed some of the dirt from the
seventy-five-to-ninety-foot slope on his own land that laterally supports
Braxtons land.  Braxton alleges that
Chen wants to take the rest of the slope away and leave only a cliff on the
boundary line.  Braxton sued Chen for loss
of lateral support, trespass, equitable claims and liens, negligence, public
and private nuisance, and unjust enrichment. 
He also sought injunctive relief prohibiting [Chen] from removing any
additional soil from [Chens] property.[1]


            From
a summary judgment in favor of Chen,[2]
Braxton appeals.  We affirm in part and
reverse and remand in part, because (1) the trial courts judgment was final,
(2) the cause of action for loss of lateral support fails as a matter of law,
(3) the cause of action for negligence fails as a matter of law, (4) the
cause of action for public or private nuisance fails as a matter of law, (5) no
evidence raises a fact issue on any imminent harm or on any probable right to
recovery on any support-related cause of action, and (6) the cause of action
for trespass remains.

(1)        The
Trial Courts Judgment Was Final

            Braxton appeals the trial courts
judgment arguing that the trial court erred in entering a final judgment since
the defendants motions for summary judgment did not address all of plaintiffs
causes of action and that genuine issues of material fact preclude the entry of
summary judgment.  The judgment
complained of is entitled Final Summary Judgment, orders that Braxton take
nothing against defendant, states that [a]ll relief
requested by any party in this case that is not expressly granted by this
judgment is denied, and asserts that [t]his judgment finally disposes of all
parties and claims in this action, is a final judgment and is therefore
appealable.  

            This
Court has jurisdiction only over appeals from final decisions of trial courts
and from interlocutory orders as provided by statute.  Lehmann
v. Har-Con Corp., 39 S.W.3d 191, 195 (Tex. 2001);
see Tex.
Civ. Prac. & Rem. Code Ann. § 51.014 (West
2008).  [A] judgment issued without a
conventional trial is final for purposes of appeal if and only if either it
actually disposes of all claims and parties then before the court, regardless
of its language, or it states with unmistakable clarity that it is a final
judgment as to all claims and all parties.  Lehmann,
39 S.W.3d at 19293.  To determine
whether an order actually disposes of all pending parties and claims, the
appellate court may look to the record in the case.  Id. at
205.  Therefore, we first review the live
pleadings, in the context of the parties asserted grounds for seeking summary
judgment, to determine what parties and claims were pending when the trial
court signed the judgment.  See Rose v. First Am. Title Ins. Co. of Tex.,
907 S.W.2d 639, 641 (Tex. App.Corpus Christi 1995, no writ).

            Braxton
argues that, while Chen filed his motions for summary judgment on plaintiffs
causes of action for loss of lateral support, negligence, trespass, and
nuisance causes of action, no motion for summary judgment was filed on Braxtons
claims for equitable claims and liens and for a permanent injunction.  

            This
Court has been unable to locate a Texas cause of action labeled equitable
claims and liens.  The substance of
Braxtons pleading is contained below:

Equitable Claims and Liens

6.01.    Plaintiff
refers to and incorporates the above factual allegations as if set forth in
their entirety herein. 

6.02.    Plaintiff
would show that Defendant has interfered with Plaintiffs legally protected
right to lateral support for his property without justification and in
conscious disregard of Plaintiffs rights. 
Therefore, Defendant is liable to Plaintiff for unjust enrichment and is
liable to Plaintiff for all gains (including consequential gains) and benefits
derived from Defendants wrongful conduct. 


6.03.    Defendant
is also liable to Plaintiff for the expense of all reasonable and necessary
expenditures to maintain or protect Plaintiffs right to lateral support for
this property. 

6.04.    Plaintiff
is entitled to an equitable lien or claim against both the property owned by
the Defendant upon which lateral support has been withdrawn and the property
owned by Defendant upon which the wrongfully removed soil has been deposited. 

6.05.    Plaintiff
sues herein asking that the Court recognize and enforce such liens by
foreclosing upon Defendants properties. 

6.06.    Plaintiff
also brings suit for all remedies for Defendants inequitable conduct which may
be allowed under the common law or which are recognized and set forth in the
Restatement of Law, Third, Restitution and Unjust Enrichment. 

 

To the extent Section 6.02 pleads
a cause of action, we find that it is for loss of lateral support, a claim upon
which summary judgment was sought.  The
remainder of Section 6.02 and Section 6.06 discuss unjust enrichment.  However, unjust enrichment is not a cause of
action.  City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc., 736 S.W.2d 247, 250 (Tex.
App.Corpus Christi 1987, writ denied); LaChance v. Hollenbeck,
695 S.W.2d 618, 620 (Tex. App.Austin 1985, writ refd
n.r.e.). 
Likewise, we find that the remainder of the pleading under equitable
claims and liens seeks a remedy and does not assert a separate cause of
action.  Therefore, Braxtons theory that
the judgment is interlocutory because it does not dispose of the claim of equitable
claims and liens must fail.

            Likewise,
[a] permanent injunction is not a cause of action but an equitable remedy.  Cooper
v. Litton Loan Servicing, LP, 325
S.W.3d 766, 769 (Tex. App.Dallas 2010, pet. denied) (citing Brittingham v. Ayala, 995 S.W.2d 199, 201 (Tex.
App.San Antonio 1999, pet. denied)).  To
obtain an injunction a party must first assert a cause of action.  Id.  Thus, [Chen was] not required to specifically
address [Braxtons] request for a permanent injunction in [his] summary
judgment motions but only those causes of action upon which [Braxtons] request
for injunctive relief was based.  Id. at 76970.

            Because
equitable claims and liens and a request for permanent injunction are not
causes of action, and because, as Braxton admits, Chens motions for summary
judgment addressed the remaining causes of action in the complaint, we are
satisfied that the trial courts motion for summary judgment disposed of all
cognizable claims addressed in Braxtons complaint.  Therefore, the trial courts judgment was
final.

(2)        The
Cause of Action for Loss of Lateral Support Fails as a Matter of Law

            According
to Braxtons geotechnical forensic engineer, Homer R. Parker, Chens removal of
dirt from the slope created unstable conditions which represent[ed] a significant potential for slope failure in the form
of a landslide that could occur on Braxtons property, render[ing] it unsuitable for future development.

            Chens
motions are based on a single premise:  [t]here
is no genuine issue of material fact that Braxtons land suffers any injury
from Chens removing dirt from Chens premises.  Chens position was based on the facts of the
case and testimony from Braxtons expert, Parker.

            Parker
explained that, as Chen removed soil from the bottom of the slope, he created a
cut slope that potentially affected the stability of the remainder of the
slope.  The cut in the slope allowed for
groundwater from the Braxton property to seep out and affect slope stability.  He testified, As you take more and more soil
out, increase the steepness of the inclination, then the factor of safety
continues to drop.  Parker conducted a
slope stability analysis using core samples from Braxtons property and
concluded the slope was a pretty unsafe slope.  He utilized Galena, a program that does not
measure stability of slopes, but predicts a factor of safety for the potential
failure.  He admitted we cannot predict
with 100 percent certainty all of the variables that go into an analysis.  

            According
to Parker, the slope factor was 1.5, and he testified that, at this factor, some
slopes will fail.  However, he admitted
that he could make no prediction of the timing of when, if ever, the slope
would collapse.  Parker stated the slope
could fail the next day or could take many years to fail.  The text of the discussion follows:

            Q.        Lets look at it this way.  Lets get it down here.  You cannot say when, if ever, either one of
those slopes will collapse, whether its the western slope or whether its the
slope that goes east and west on the top of the property?

 

            A.        No. 
I made no prediction of the timing.

 

            Q.        Okay. 
And that means that that land can be out there for another 40,000 years,
like your record indicated the slope is, without ever collapsing?

 

            A.        Its possible, but not likely.

 

During cross-examination, Parker
testified:

            Q.        . . . . Mr. Supercinski
said its possible that that slope could be out there another 40,000 years and
not fail; is that right?

 

            A.        I think he said 40 years, but yeah,
whatever --

 

            Q.        Forty years?

 

            A.        These things -- theres a lot of time
dependency here that we cant accommodate. 

 

            Q.        Is it also possible, using that same
sort of questioning, that it could fail tomorrow?

 

            A.        Absolutely.  Especially if we get a storm event.

 

            Q.        The whole point of your evaluation is to
determine the risk of failure or the -- state it another way, the minimum acceptable
slope to prevent failure?

 

            A.        Thats correct.

 

            Q.        And thats
what you did in this case?

 

            A.        Thats
what I did.

 

            Parker
also provided two expert reports.  This
first report explained that a maximum slope inclination should not be steeper
than 2.5H:1.0V.  In other words,
ideally, the slope should not exceed a vertical rise of one foot . . . for
every 2.5 feet of horizontal distance.  Because
Chens removal of dirt yielded slope inclinations ranging from 2.3:1.0 to 2.7:1.0,
Parker believed the inclination [was] steeper than what is normally considered
acceptable for cut slopes in native strata.  In Parkers opinion, there was danger that the
earth mass could . . . remove a rather large segment of the Braxton property .
. . render[ing] it unsuitable for future development
due to the potential for landslide. 
However, consistent with his testimony, Parker reiterated, It is not
possible to predict the time element for deterioration or collapse of the
slope.  Suffice it to state the
prevailing conditions do not appear to represent a stable condition.  

            The
most recent report from Parker stated:

I have recently been provided with an updated
survey prepared by Haneys Engineering and Land Services and I have been
requested to issue an updated report.  I
have not yet had sufficient time to review the survey and issue an updated
report.  Until such time as I am able to
complete my review, my opinions remain the same as were contained in my prior
report and testimony before the Court.  

 

            As stated in my prior testimony, my opinions include the
following:  

 

1.         The slope at the time of the May 13th survey represented a
barely   acceptable slope.  

2.         However,
the angle of the slope had been increased by the removal of        additional dirt between the May 13th survey
and my taking of the soil       samples.  

3.         There
was a greater risk of a slope failure by the time of my taking of the   soil samples. 

4.         By
the time of the taking of the soil samples, appeared to me to have          become an unsafe slope.  

5.         If
Chen were to be allowed to continue to remove soil from the slope, the risk of slope failure would increase.  

6.         The
removal of soil in the slope will potentially affect the remainder of       the slope. 


7.         If
Chen continues to remove soil, then the risk for potential failure increases and the size of the potential failure
increases.  

8.         Continued
removal of soil from the slope will likely result in partial to        complete failure of the exposed slope
face.  

9.         The
quantity of earth that would be involved in any such failure would be             significant and the top of such a
slide would encroach onto Braxtons property.
. . .  

 

            Parker concluded that a failure of
the slope could be repaired, but that such repair would be expensive.  The cost could be mathematically ascertained
and would comprise cost of dirt to fill in the slope, a possible retaining
wall, and labor.  

            In
light of Parkers testimony, which stated that slope failure could occur at any
point in the future, Chen argued that Braxtons causes of action failed because
of lack of injury and mere speculation about injury.  

            We
employ a de novo review of the trial courts grant of a summary judgment, which
is based on written pleadings and written evidence.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Lamar v. City of Longview, 270 S.W.3d
609, 613 (Tex. App.Texarkana 2008, no pet.); see Tex. R. Civ. P.
166a(c).  Summary judgment is proper if Chen
established that there was no genuine issue of material fact and that they are
entitled to judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); French v. Gill,
252 S.W.3d 748, 751 (Tex. App.Texarkana 2008, pet. denied); Powers v. Adams, 2 S.W.3d 496, 497 (Tex.
App.Houston [14th Dist.] 1999, no pet.) (citing Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985)).

            During
our analysis of the traditional motion, and in deciding whether there is a
disputed material fact issue which precludes summary judgment, proof favorable
to Braxton will be taken as true, and every reasonable inference will be
indulged in his favor.  Limestone Prods. Distrib., Inc. v. McNamara, 71 S.W.3d 308, 311
(Tex. 2002); Nixon, 690 S.W.2d at 54849.
 A no-evidence summary judgment is
essentially a pretrial directed verdict. 
We, therefore, apply the same legal sufficiency standard in reviewing a
no-evidence summary judgment as we apply in reviewing a directed verdict to
determine whether Braxton produced any evidence of probative force to raise a
fact issue on the material question presented.  Wal-Mart
Stores, Inc. v. Rodriguez, 92
S.W.3d 502, 506 (Tex. 2002); Woodruff v.
Wright, 51 S.W.3d 727 (Tex. App.Texarkana 2001, pet. denied).  A nonmoving plaintiff will defeat a
no-evidence summary judgment motion by presenting more than a scintilla of
probative evidence on each element of his or her claim.  King
Ranch, Inc. v. Chapman, 118
S.W.3d 742, 751 (Tex. 2003).

            The
trial courts summary judgment specified no particular ground as supporting the
summary judgment.  When, as is the case
here, the trial court does not set out the grounds on which it ruled, we affirm
the summary judgment if any ground urged in the motion for summary judgment is
meritorious.  W. Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex.
2005).

            Texas law as to
lateral support is correctly stated in Simon
v. Nance, 45 Tex. Civ. App. 480, 100 S.W. 1038, 1040 (Austin, 1907, no
writ).  Carpentier v. Ellis, 489 S.W.2d 388, 389 (Tex. Civ. App.Beaumont 1972, writ refd n.r.e.).  Simon states:

By the weight of authority it is a well settled
rule of the common law that an owner of land has an absolute right to the
lateral support of adjoining land.  In
other words, he has the right to have his land remain as it was in a state of
nature, and neither the adjoining landowner, nor any one else, can rightfully
remove from the boundaries of the land the supports which hold it in its
natural position.  Therefore, if the
adjoining proprietor constructs a ditch or other excavation in such a manner as
causes the soil of the complainant to cave in, slough off, or wash away, such
adjoining proprietor is liable for damages, and, in a proper case, may be
restrained by injunction.  The right of
lateral support of the soil is absolute, and does not depend upon the question
of due care or negligence.  However, this
absolute right is limited to the soil itself, and does not apply to buildings
or other structures which have been placed upon the land.  When it is sought to recover damages to
improvements which have been placed upon the land, then, as a general rule, the
question of negligence becomes an important factor.

 

Id.

            Before a party may
recover for the loss of lateral support, it must be shown that his or her land
has been injured.  Wingfield v. Bryant, 614 S.W.2d 643, 645 (Tex. Civ. App.Austin 1981, writ refd n.r.e.) (citing Simon, 100 S.W. 1038).  The aim of a damage award in a loss of
lateral support action is to make the injured plaintiff whole.  B.A.
Mortgage Co. v. McCullough, 590 S.W.2d 955, 957 (Tex. Civ. App.Fort Worth
1979, no writ).  Where there is no
injury, there is no need to make the plaintiff whole, and a cause of action for
loss of lateral support will not lie.  See Puretex Lemon
Juice, Inc. v. S. Riekes & Sons of Dallas, Inc., 351 S.W.2d 119, 122 (Tex. Civ.
App.San Antonio, 1961, writ refd n.r.e.) (In another analogy, one man lawfully dug a ditch
on his land and some time later this resulted in the loss of lateral support to
his neighbors land.  The neighbors
action for damages accrued not at the time the ditch was dug, but when he later
sustained injury.  Simon v. Nance, 45 Tex. Civ. App. 480, 100 S.W. 1038.).

            The
evidence before the trial court established that no loss of lateral support on
Braxtons property had occurred.  At
best, Parkers testimony established that injury to Braxtons property could occur any time in the future.  This does not constitute evidence of an
injury in fact as required to support a cause of action for loss of lateral
support.

            Braxton
also argues that, because he testified he was familiar with real property sales
within one mile of his property, he satisfied the requirement of damage by
providing an affidavit that the threat of the loss of collateral support on
the boundary line with the Defendants land has substantially damaged the
market value of my property.  Yet, the threat of the loss of lateral support is
not sufficient injury to support a claim for loss of lateral support.

            Finally,
Braxton argues that he ha[d] presented evidence as part of his responses
showing that the slope created by [Chens] removal of soil had begun to erode
and collapse.  Because the alleged
erosion of soil was on Chens property, this did not constitute evidence that
Chens excavation cause[d] the soil of the complainant to cave in, slough off,
or wash away, as required by Simon.  100 S.W. at 1039.[3]

            The
summary judgment proof contains no evidence demonstrating injury to Braxtons
land as required under a claim for loss of lateral support.  In fact, the evidence established the
contrary; no loss of lateral support had yet occurred.  Therefore, even reviewing the evidence in a
light most favorable to Braxton, we find that the trial courts summary
judgment on this claim was proper.

(3)        The Cause of Action for
Negligence Fails as a Matter of Law

            The
elements of a negligence cause of action are a legal duty, a breach of that
duty, and damages proximately caused by the breach.  IHS
Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004) (citing D. Houston, Inc. v. Love, 92 S.W.3d 450, 454 (Tex. 2002)).[4]  Chens motion for summary judgment and reply
to Braxtons response alleged the negligence cause of action failed because no
duty of lateral support was owed and no proof of damages was offered. 

            No
right of lateral support for land exists where the natural condition thereof
has been altered through mans activities so as to create a need for lateral
support where none existed in a state of nature, as where an owner raises the
level of his land above his neighbors adjoining land by filling.  Carpentier, 489 S.W.2d at 390.  Braxtons petition states:

At some time in the past, predecessors in interest
to [Chens] property removed soil from [Chens] property, presumably in order
to make it level and usable.  After this
was done, there was an approximate 20 to 25 foot difference in the surface
level of [Braxtons and Chens] tracts.

 

. . . . When [Chens] predecessors in interest
removed the soil from [Chens] property, they retained a slope at the back of
the property from [Braxtons] boundary to the lowered property level of [Chens]
property and thereby maintained the lateral support that was necessary for
[Braxtons] property. 

 

The petition alleges that the
properties are not in their natural state.

            Chen
also claimed that the negligence action fail[ed]
because of lack of injury and mere speculation about injury, and [l]ack of evidence of the fact of damage to Braxtons land.  In response to this claim, Braxton replied
that his affidavit, in which he stated that he was familiar with real property
sales within one mile of his property and concluded the threat of the loss of
collateral support on the boundary line with the Defendants land has
substantially damaged the market value of my property, was some evidence of
the damage element.  

            Braxtons
assertion in response to Chens challenge to the damage element of Braxtons
negligence claim must fail as a matter of law for several reasons.  First, [t]o constitute proper summary
judgment evidence, an affidavit must be made on personal knowledge, set forth
facts which would be admissible in evidence, and show the affiants competence.
 Cammack the Cook, L.L.C. v. Eastburn,
296 S.W.3d 884, 894 (Tex. App.Texarkana 2009, pet. denied) (citing Tex. R. Civ. P. 166a(f)).  Conclusory
statements based on opinion are insufficient to raise a question of fact to
defeat summary judgment.  Id.; McIntyre
v. Ramirez, 109 S.W.3d 741, 749 (Tex. 2003); Ryland Group, Inc. v. Hood,
924 S.W.2d 120, 122 (Tex. 1996); Old Republic
Sur. Co. v. Bonham State Bank, 172 S.W.3d 210, 217 (Tex. App.Texarkana
2005, no pet.); Selz v. Friendly Chevrolet, Ltd., 152 S.W.3d 833, 837 (Tex.
App.Dallas 2005, no pet.) (affidavit that is nothing more than sworn statement
of allegations in pleading is conclusory and insufficient
to create fact issue).  A conclusory statement is one that does not provide the
underlying facts to support the conclusion.  Cammack the Cook,
296 S.W.3d at 894.  Because Braxtons
affidavit does not state any facts to support the conclusion of substantial
damage to market value, it is conclusory.

            Next,
to establish the last element of damage, the plaintiff must prove that the damages
were proximately caused by the breach.  Hooper v. Smallwood, 270 S.W.3d 234, 240
(Tex. App.Texarkana 2008, pet. denied). 
To establish proximate cause, a plaintiff must prove two elements,
cause-in-fact and foreseeability.  Cause-in-fact is established when the act or
omission was a substantial factor in bringing about the injuries, and without
it, the harm would not have occurred.  Id. (citation omitted).  Viewing not just the affidavit, but the
entire record, we conclude Braxton failed to bring forth any evidence that he
was damaged by Chens excavation, or that any damage was proximately caused by
a breach of duty.

            Third,
if the beach of duty alleged by Braxton is loss of lateral support, an
indication of loss of market value is not the proper valuation under which
damages are assessed.  As stated in Simon, the right of lateral support is limited
to the soil itself and does not apply to buildings or other structures which
have been placed upon the land.  Simon, 100 S.W. at 1040.  The lands fair market value, with which
Braxton is familiar, includes the value of improvements.  When it is sought to recover damages to improvements
which have been placed upon the land, then, as a general rule, the question of
negligence becomes an important factor. 
Id. at 1039.  But Braxton has provided no allegation or
proof that Chens actions on the boundary have caused any damage to the
improvements on Braxtons tract, or thateven if there had been such allegation
or proofany such damage to improvements was foreseeable.  Thus, assuming the threat of damage to soil
in the form of a market value reduction was recoverable under a theory of
negligence, Braxtons affidavit does not show the affiants competence with
respect to this matter.  Cammack the Cook, 296 S.W.3d at 894.  Braxton did not claim that he was familiar
with the fair market value of his land without improvements or that he could
calculate diminution in market value of the land (without improvement) before
and after the excavation through his use of knowledge of fair market value of
other properties.  Further, because the
property had already been excavated before Chens purchase of the property, Braxton
would be required to provide evidence of the difference in value before and
after Chens removal of the soil from the cut slope only.

            The
summary judgment proof contains no evidence demonstrating that Braxton suffered
damages proximately caused by Chens negligence.

(4)        The
Cause of Action for Public or Private Nuisance Fails as a Matter of Law

            A
nuisance is a condition that substantially interferes with the use and
enjoyment of land by causing unreasonable discomfort or annoyance to persons of
ordinary sensibilities.  Schneider Natl Carriers, Inc. v. Bates, 147 S.W.3d 264, 269
(Tex. 2004).  A private nuisance is a nontrespassory invasion of anothers interest in the
private use or enjoyment of land.  Bily v. Omni Equities, Inc., 731 S.W.2d 606, 611 (Tex. App.Houston [14th Dist.] 1987,
writ refd n.r.e.); see Lethu, Inc. v. City of Houston, 23 S.W.3d 482, 489 (Tex. App.Houston
[1st Dist.] 2000, pet. denied).  By
contrast, a public or common nuisance is a condition that amounts to an
unreasonable interference with a right common to the general public.  See Jamail v. Stoneledge
Condo. Owners Assn, 970 S.W.2d 673, 676 (Tex.
App.Austin 1998, no pet.).

            In
general:

 

Nuisance, whether it be public or private, is thus
a field of tort liability, a kind of damage done, rather than any particular
type of conduct.  As in the case of any
other kind of damage, it may be inflicted by conduct which is intended to cause
harm, by that which is merely negligent, or by that which involves an unusual
hazard or risk . . . .

 

City of Tyler v. Likes, 962 S.W.2d 489, 504 (Tex. 1997).  Thus, [d]amages
also are an essential element of a cause of action for nuisance.  Brown
v. Ultramar Diamond Shamrock Corp., No. 13-02-00535-CV, 2004 WL 1797580
at *8 (Tex. App.Corpus Christi Aug. 12, 2004, no pet.) (mem.
op.) (citing Golden Harvest Co. v. City
of Dallas, 942 S.W.2d 682, 689 (Tex. App.Tyler 1997, pet. denied) (We
must next examine applicable Texas law regarding the elements of nuisance
necessary to support a claim for damages.)).  A nuisance may arise by causing (1) physical
harm to property, such as by the encroachment of a damaging substance or by the
propertys destruction, (2) physical harm to a person on his or her property
from an assault on his or her senses or by other personal injury, and (3)
emotional harm to a person from the deprivation of the enjoyment of his or her property
through fear, apprehension, or loss of peace of mind.  Nugent
v. Pilgrims Pride Corp., 30 S.W.3d 562, 57475 (Tex. App.Texarkana 2000,
pet. denied).

            In
response to Chens motion for summary judgment, Braxton argued that he
presented more than a scintilla of evidence concerning plaintiffs deprivation
of enjoyment of property due to fear, apprehension, or loss of peace of mind.  Braxtons brief cites his affidavit and
claims the following excerpts satisfied the damage requirement:

I am aware of the need for lateral support for my
property.  It was my belief that if the
dirt that was contained in the slope and that provided lateral support to my
land was removed, my land was likely to collapse for lack of lateral support.

 

            .
. . .

 

. . . . According to my latest visual inspections
of Defendants property, the slope which he has created to date has already
started to erode back towards my property.

 

            My
investigation led me to understand that Defendant intended to remove dirt all
of the dirt [sic] down to the level of the rest of his property, to either sell
the dirt or use it to improve other property that Defendant owns, and, once
that was completed, to sell the property, and leave the country. . . .

 

. . . . Defendants property has been listed and
offered for sale through a local realtor. 

 

            Defendant
has pushed dirt from his property into the drainage system between the
properties.  Also, since the dirt and
silt that accompanies Defendants excavation is not being contained with proper
erosion controls, dirt and silt has stated to filter into that drainage
system.  If the dirt from Defendants
excavation is allowed to continue to silt and erode into that drainage system,
that drainage system will become blocked and the surface water will be unable
to drain properly and will back up onto my property where it will create an
unsanitary condition.

 

            .
. . .

 

            Based
upon all of this information, I believed that it was imperative for me to file
suit against Defendant in order to protect my property.  I believe that if I had waited to file this
suit until after the slope between the properties had collapsed and the
drainage system had become blocked, I would not have been able to locate the
Defendant in order to sue him to recover for the cost to install a retaining
wall, replace the soil that I would have lost, and forcing him to bear the cost
of clearing the drainage system.  

 

While one might assume that a
neighbors excavation of his own land could cause fear, apprehension, or loss
of peace of mind, we find this evidence does not raise a fact issue as to
whether Braxton actually experienced fear, apprehension, or loss of peace of
mind and suffered a deprivation of
enjoyment of property.

            Because there was
no evidence of physical harm to Braxtons property, physical harm to Braxton on
his property from an assault on his senses, or emotional harm to a person from
the deprivation of the enjoyment of his property through fear, apprehension, or
loss of peace of mind, we conclude that Chen established his right to summary
judgment on Braxtons claims of private and public[5]
nuisance.  The trial courts summary
judgment was proper as to this cause of action.

(5)        No Evidence Raises a Fact Issue on any Imminent Harm or on any
Probable Right to Recovery on any Support-Related Cause of Action

 

            One might have concern that, even if
none of the above causes of action upon which Braxtons requested injunctive
relief is based have ripened or are supported by any evidence of damages,
summary judgment may not be proper as to a possible right to injunctive relief
for threatened harm in this situation. 
But we conclude that no evidence raises a fact issue such as would allow
a request for injunctive relief to survive the summary judgment granted by the
trial court.

            Injunctive
relief is ordinarily available if a wrongful act gives rise to imminent and
irreparable harm for which there is no adequate remedy at law.  Letkeman v. Reyes,
299 S.W.3d 482, 486 (Tex. App.Amarillo 2009, no pet.) (restrictive covenants);
Jim Rutherford Invs., Inc. v. Terramar
Beach Cmty. Assn, 25 S.W.3d 845, 849 (Tex. App.Houston
[14th Dist.] 2000, pet. denied).  To
obtain injunctive relief, one must generally establish the existence of
imminent harm.[6]  Operation
Rescue-Natl v. Planned Parenthood of Houston & Se. Tex., Inc., 975 S.W.2d 546, 554 (Tex. 1998); Frey
v. DeCordova Bend Estates Owners Assn, 647 S.W.2d 246, 248 (Tex. 1983).

            The
summary judgment proof, viewed in favor of the nonmovant,
did not establish any fact issue regarding imminent harm.  See Democracy
Coalition v. City of Austin, 141 S.W.3d 282, 29596 (Tex. App.Austin 2004,
no pet.).  In fact, it established that
the prospect for harm was not imminent.  [A]n
injunction will not lie to prevent an alleged threatened act, the commission of
which is speculative and the injury from which is purely conjectural.  Markel v. World Flight, Inc., 938 S.W.2d 74, 80 (Tex. App.San
Antonio 1996, no writ).  Fear of a possible
injury is not sufficient.  Frey, 647 S.W.2d at 248.  The summary judgment evidence did not raise a
fact issue on imminent harm or a probable right to recovery on any of the
causes of action predicated on the potential lack of support of the slope.

            And,
as we have noted above, the summary judgment evidence also established that
there was no probable right of recovery on any of the alleged causes of action
bottomed on the support issue.

            For
both reasons, the summary judgment is valid even as to the requested injunctive
relief.

(6)        The Cause of Action for
Trespass Remains

            But,
Braxton also sued for trespass.              Trespass to real property occurs
when a person enters anothers land without consent.  Rankin
v. FPL Energy, LLC, 266 S.W.3d
506, 509 n.4 (Tex. App.Eastland 2008, pet. denied); Wilen v. Falkenstein, 191 S.W.3d 791, 79798 (Tex.
App.Fort Worth 2006, pet. denied).  To
recover damages, a plaintiff must prove that:  (1) the plaintiff owns or has a lawful right
to possess real property; (2) the defendant entered the plaintiffs land and
the entry was physical, intentional, and voluntary;[7]
and (3) the defendants trespass caused injury to the plaintiff.  Rankin,
266 S.W.3d at 509 n.4; Wilen,
191 S.W.3d at 798.

            Here,
Braxtons summary judgment evidence stated, During his excavation of his
property, Defendant pushed dirt from his property over the boundary line
separating our properties and onto my land. 
This was done without my consent or authorization.  Chen argues that the evidence failed to
establish that the trespass caused injury to Braxton.  Braxton responds by asserting [i]f defendant has committed a trespass, plaintiff is
entitled to nominal damages under trespass even if plaintiffs land suffered no
physical damage.  

            We
agree with Braxton on this issue. 
Although Braxton did not respond with summary judgment proof that Chen
did any injury by entering his property, Braxton may still be entitled to, at
least, nominal damages for the trespass.  Brown,
2004 WL 1979580, at *8 (citing Gen. Mills
Restaurants, Inc. v. Tex. Wings, Inc., 12 S.W.3d 827, 833 (Tex. App.Dallas 2000, no pet.); Henry v. Williams, 132 S.W.2d 633, 634 (Tex.
Civ. App.Beaumont 1939, no writ) (by alleging and proving trespass, appellants
were entitled, at least, to nominal damages)).

            Viewing
the evidence in a light most favorable to Braxton, we conclude Chen did not
carry his burden to prove entitlement to summary judgment on this sole
issue.  Therefore, we reverse the trial
courts grant of summary judgment on the claim of trespass and remand the
matter to the trial court for further proceedings.[8]

            We
affirm the trial courts summary judgment on Braxtons cognizable claims of
loss of lateral support, negligence, and public and private nuisance.  However, the trial courts summary judgment
with respect to trespass is reversed and remanded for further proceedings
consistent with this opinion.

 

 

 

 

                                                                        Josh
R. Morriss, III

                                                                        Chief
Justice

 

Date Submitted:          May 31, 2011

Date Decided:             September 13, 2011











[1]The
trial court had previously issued a temporary injunction dated September 10,
2009, commanding Chen to desist and refrain from removing or moving any of the
soil located on [his] property.  For
reasons stated in a previous opinion from this Court, the temporary injunction
was reversed.  Chen v. Braxton, No. 06-09-00088-CV, 2010 WL 99064 (Tex. App.Texarkana
Jan. 13, 2010, no pet.) (mem. op.).

 





[2]Chen
filed no-evidence and traditional motions for summary judgment arguing [t]here
is no genuine issue of material fact that Braxtons land suffers any injury
from Chens removing dirt from Chens premises, and because of a lack of
injury, Braxtons negligence, trespass, and nuisance causes of action fail[ed] as a matter of law.  The trial court granted Chens motions for
summary judgment and entered a take-nothing judgment in his favor. 





[3]Braxton
also argues that expert testimony regarding costs to install a retaining wall
on his property in substitution for the lateral support that had previously
been provided by the dirt removed and being removed by defendant satisfied the
requirement of damage.  However, evidence
of cost to repair nonexistent damage does not satisfy the requirement of
damage.





[4]Braxtons
pleading with respect to negligence states: 
7.01.  Plaintiff refers to and
incorporates the above factual allegations as if set forth in their entirety
herein.  7.02.  Plaintiff would show that Defendant through
Defendants actions has breached a duty owed to Plaintiff and have breached
various statutorily imposed duties, and that these breaches of duty have proximately
caused Plaintiff damages.  Similar
pleadings have been construed as failing to state a cause of action upon
negligence.  Carpentier stated: 

 

We
have carefully examined the pleadings and find that plaintiffs only allegation
in this respect is that the damage was a direct and proximate result of defendants
failure to maintain a proper footing for their retaining wall.  We do not regard that pleading as complaining
of negligence.  The word negligence
does not have to be used to constitute such a pleading, but the essence must be
the failure to use that degree of care that an ordinary prudent person would
use under the same or similar circumstances.  We construe this pleading to be one as under
the absolute liability rule and will proceed to examine this case under that
theory of law.  

 

Carpentier, 489 S.W.2d at 389.  This is because, as explained in Williams v. Thompson, [t]o say that
loss of lateral support shows negligence . . . would be but to beg the question.  256 S.W.2d 399, 405 (Tex. 1953).





[5]No
evidence was presented demonstrating that the nature of the nuisance was a
public nuisance.





[6]Ordinarily,
there are four elements to establish to get an injunction:

 

(1)
the existence of a wrongful act; (2) the existence of imminent harm; (3) the
existence of irreparable injury; and (4) the absence of an adequate remedy at
law.  The purpose of injunctive relief is
not to grant relief for past actionable wrongs or to prevent commission of
wrongs not imminently threatened. 

 

Webb v. Glenbrook Owners Assn, 298 S.W.3d 374, 384 (Tex.
App.Dallas 2009, no pet.) (citations omitted).





[7]Although
we may affirm the trial courts summary judgment if any ground urged in the
motion for summary judgment is meritorious, because the only ground asserted in
Chens motions for summary judgment was the claim of damages, we will only
assess that issue on appeal.  Urena, 162 S.W.3d
at 550.





[8]As
in Brown, [t]his holding only
addresses [Chen]s entitlement to a no-evidence summary judgment on the element of damages in [Braxton]s
trespass . . . claims.  We do not
preclude by this holding [Braxton]s presentation of proof at trial of more
than nominal damages.  2004 WL 1979580,
at *8 n.6.