## Frederick Seitz, Trustee, Appellee, v. Coal Valley Mining Company, Appellant.

### Gen. No. 5,100.

1. MINES AND MINING—*what does not waive obligation to support surface land.* A conveyance of the right to mine all the underlying minerals implies that in so mining such minerals the surface land shall be sufficiently supported and that so much of such minerals may be mined as can be obtained without injury to such surface; a waiver of the obligation to support must be made by the owner of the surface land by language clear and unequivocal; such a waiver does not follow a conveyance of *all* such minerals nor from the use of language in such conveyance to the effect that the mining operations shall be conducted with "as little damage to the surface * * * as conveniently may."

2. MINES AND MINING—*what evidence competent in action for injury to surface land.* The evidence of witnesses who made their examinations of the land in question after the suit was instituted is competent even though a recovery was limited to the damages which have accrued to the time of the institution of the action, if permanent injuries were claimed and the evidence of such witnesses is applicable to such injuries.

Action in case. Appeal from the Circuit Court of Rock Island county; the Hon. E. C. GRAVES, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed April 28, 1909.

JACKSON, HURST & STAFFORD, for appellant.

Jos. L. HAAS and H. A. WELD, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

John Seitz, the owner of a certain forty acre tract in Mercer county and other lands, conveyed the coal and other minerals beneath the surface thereof to the Coal Valley Mining Company. The deed contained the following:

"Together with the right to extract, mine and carry away all the said coal and mineral, including the ribs and pillars, in such manner as it shall deem best, and

to construct, maintain and use all such air and other shafts and roads thereto and waterways therefrom, as it may deem necessary or convenient for that purpose; also the right to appropriate and use all such part or parts of the surface of said land as it may deem necessary or convenient for the purpose of dumping thereon soil, clay and rock excavated from said premises, and for the purpose of erecting, maintaining and using such pumps, boilers, machinery, buildings, structures and other appliances as it may deem necessary or convenient for the purpose of raising water and other material from such mines and shafts, together with the right to discharge at or near said shafts or any of them, upon the surface of said premises, any and all water which may come or be raised from said mines; together with all such other and further rights and privileges as may be usual or necessary to enable it —— said party of the second part, its successors and assigns——to successfully mine and market all said coal and mineral.''

It also contains the following:

''And said party of the second part doth hereby covenant and agree to and with said John Seitz, his heirs and assigns, that it and they shall and will, in and about the mining and excavation of the coal, ribs, pillars and minerals aforesaid, and in and about the enjoyment of the rights and privileges by these presents to it granted, do as little damage to the surface of said land as it and they conveniently may.''

John Seitz afterwards died on January 27, 1897, leaving a will conveying this real estate to his wife, Fredericke Seitz, in trust for certain purposes, which trust had not been terminated when this suit was begun. This is a suit to recover damages alleged to have been caused to the surface and to the buildings thereon by the acts of the appellant in mining coal thereunder without placing and leaving proper and necessary supports, and in withdrawing such props and pillars as it had placed there, and causing the surface soil to crack, settle and subside, and ditches, ridges and holes to be formed therein, and other injuries to be done to the

surface and the dwelling house, barns and other buildings, and the foundations and walls to crack and be greatly damaged. The suit was originally brought in the name of the trustee and the *cestui que trust,* but an amended declaration was in the name of the trustee only. Defendant pleaded the general issue and four pleas of statutes of limitation. No issue in writing was formed upon these special pleas, but the parties went to trial without objection, and oral issues will be held to have been formed thereunder. Supreme Court of Honor v. Barker, 96 Ill. App. 490. At the trial appellee had a verdict for $1200 against appellant and a judgment thereon. This is an appeal by the defendant below.

Appellant concedes that some substantial injury was done to the surface and to the buildings thereon by its mining operations. Appellee relies upon the rule of law thus stated in Wilms v. Jess, 94 Ill. 464: "Where the surface of land belongs to one and the minerals to another, no evidence of title appearing to regulate or qualify their rights of enjoyment, the owner of the minerals can not remove them without leaving support sufficient to maintain the surface in its natural state." Appellant concedes the correctness of this rule of law, but contends that it is not liable because of the language last above quoted from the deed from John Seitz to it of the coal beneath the surface. The argument by appellant that it was anticipated and presumed by the use of that language in the deed that damage would be done to the surface of the land by the mining and removal of the coal, ribs and pillars, and that for such damage John Seitz was compensated in the consideration paid for that deed, seems strong and forcible. An examination of the authorities, wherein the above general rule that the owner of the surface of the land is entitled to the support of the subjacent coal and minerals is laid down, will be found to strongly hold that the right of support can only be waived by express words of waiver or by necessary

implication from the language used. In Burgner v. Humphrey, 41 Ohio St. 340, the facts were that Burgner conveyed the coal under the surface of his land to defendants, with the right to dig, mine and remove the same, upon certain royalties reserved in the conveyance or lease. It was specially agreed that no mining operations by the lessees should extend to or be so near the dwelling house or barn on said land as to injure said buildings. Defendants carried on mining operations on the premises. Plaintiff sued them both to recover royalties and also damages for injuries to his property. The third cause of action stated in the petition was that the defendants negligently removed the coal so as to cause the surface of the land in many places to sink down in deep holes and so that about sixteen acres were destroyed by falling in, and by reason thereof the land had been rendered unfit for cultivation or plowing. The answer to the third cause of action alleged that defendants had mined and removed the coal in a careful and workmanlike manner, and that if any injuries resulted to the surface therefrom they were only the ordinary and natural injuries that would arise from the mining and removing of the coal. Under the third cause of action, plaintiff introduced proof tending to show that the defendants in mining the coal removed all the pillars, ribs of coal, and supports, whereby the surface was supported, and that the result of removing said pillars, ribs of coal and supports, was that the surface caved in and fell in deep holes and was thereby made wholly unfit for plowing and cultivation. Defendants introduced proof that they mined and removed the coal in the most approved method, and that the approved method of mining coal was to take out all the coal without leaving pillars, ribs or supports for the surface. The jury returned a special verdict, finding that the only negligence of defendants in mining the coal was the removal of the ribs and pillars and that they were removed in a proper manner if the defendants had the right to

remove all the coal from under the land without reference to any support to the surface, and they assessed the damages done to the surface by the mining and removing of the coal.  The trial court rendered judgment against the plaintiff on the third cause of action and plaintiff took the cause to the Supreme Court. That court held that when the owner of the fee grants the minerals, reserving the surface to himself, his grantee will be entitled only to so much of the minerals as he can get without injury to the superincumbent soil, unless the language of the grant clearly imports that it was the intention of the grantor to part with the right of subjacent support; that the owner of the surface is entitled to have it supported by the underlying mineral strata; that each owner must so use his own as not to injure the property of the other; that the subjacent support must be such as will preserve the integrity of the surface, but if the soil above does not require the support of the underlying minerals they may be entirely removed.  It was there said that the right which the surface has to support is a part of the freehold, and the mine owner can only work so far as is consistent with this right and is liable if he violates it, and that the highest care and skill in the working of the mine is not a defense if injury results to the surface from the removal of the subjacent strata; and that if the grantee of the minerals wishes to be discharged from the servitude of leaving a sufficient support to the surface, he must obtain it by explicit language in the contract, or the contract must contain something from which the intention to discharge him from that obligation will appear by necessary intendment.  It was held that although Burgner, by the terms of his lease, guarded his dwelling house and barn from being injured by extending the mining operations too far, he did not thereby authorize his lessees to remove the support from the rest of the farm.  The court said that the intention to dispense with subjacent support should be manifested by clear and unequivocal language.  In reply to the argument

that the lease conveyed all the coal, and meant that it might all be taken away without regard to the effect of its removal upon the surface, the court said that the defendants had the right to remove the coal so far as they could consistently with the surface rights; but if they resolved to remove the natural props and pillars for the support of the soil, it was incumbent on them to substitute artificial supports if they could thereby preserve the integrity of the surface. It was held that the authority given in the lease to mine and remove the coal did not authorize them to let down the surface. The Supreme Court entered judgment for plaintiff on the third cause of action, for the damages assessed by the jury.

Coleman v. Chadwick, 80 Pa. St. 81, was a suit by the owner of the surface of a tract of land against the defendants, who owned a coal mine thereunder, for taking away the coal without leaving sufficient ribs and supports, or putting up the necessary posts for supports, in consequence of which the surface fell down, making cracks in the surface and injuring the dwelling house, fences, fruit trees, etc. It was held that when the owner of the fee grants the minerals, reserving the surface to himself, the grantee can only take away so much of the minerals as he can get without injury to the superincumbent soil, unless the owner of the surface has, by his grant, parted with the right of surface support. The deed in that case, conveying the coal, granted all the privileges necessary for the convenient working and transportation of the coal, and all rights and privileges incident or usually appurtenant to the working and usage of coal mines. It was held that the right to support was not defeated by implication arising from that language.

In Scranton v. Phillips, 94 Pa. St. 15, the owner of the surface, by contract with the owner of the coal underneath the surface, bound himself to give the owner of the coal, his heirs and assigns, a full release and discharge forever from any liability for any injury that might result to the surface of the premises

from the mining and removal of the coal, and it was held that the coal miner was not liable for damages afterwards done to the surface. The doctrine of Coleman v. Chadwick, *supra,* was reaffirmed in Carlin v. Chappel, 101 Pa. St. 348, and other authorities were there reviewed, and the case of Scranton v. Phillips *supra,* was distinguished from the other cases on the ground that it only decided that the right of support to the surface could be conveyed away by the express words of the grant.

Williams v. Hay, 120 Pa. St. 485, was a suit by the owner of the surface against the owner of a coal mine underneath to recover damages for injuries to the surface alleged to have been caused by the defendant's negligently mining and removing the coal without leaving sufficient pillars, ribs and supports, and without putting up sufficient supports, whereby the surface caved in and it became impossible to cultivate the same. Plaintiff acquired title from a former owner of the entire interest, who reserved in his deed the right to mine and take away the coal beneath the surface, in which deed was the proviso that said grantor, his heirs and assigns, "in mining and removing the coals, iron ore and mineral aforesaid, shall do as little damage to the surface as possible." On writ of error to the Supreme Court, defendant contended that the right to surface support was waived by the terms of the deed above quoted. Upon this point the court said: "It was urged that this language implies that some damage would necessarily ensue to the surface in mining the coal. But an absolute right to surface support is not to be taken away by a mere implication from language which does not necessarily import such a result. The owner of the coal had certain surface rights which were indispensable to the carrying on of his mining operations, such as the right to go upon the surface to make explorations for the minerals beneath, and bore holes, sink shafts, drifts, etc., and the right to make roads and erect structures for taking out the coal. Hence it is a fair construction of the deed to say

that in doing these things as little damage was to be done to the surface as possible. The provision referred to covers these matters and as we have a subject to which it directly applies, it would be a strained interpretation of the deed to hold that it was intended to take away the right of surface support.''

Noonan v. Pardee, 200 Pa. St. 474, is not in point, for that was a case where the owner of the entire estate, in granting the surface and reserving the minerals, expressly agreed that the surface should not be in any manner cut, broken, or displaced by the removal of coal underneath, and that every damage done to the surface by the exercise of the mining privileges reserved should be made good by the grantor.

In Livingston v. Moingona Coal Company, 49 Iowa, 369, defendant conveyed the premises with a reservation of all coal and coal mines under the surface, and with full right to mine and remove the same by such means as it deemed proper, without thereby incurring any liability for damage to the surface of the land in working coal, coal mines, etc., and removing the same. Plaintiff held under the title conveyed by that deed. He sued the defendant to recover for injuries done by defendant in mining coal under his house and premises, without making or leaving sufficient supports to uphold the earth above the coal, by reason of which want of care the surface was broken up and defendant's house injured. It was held that defendant was bound to exercise ordinary care in removing the coal, and that if such care required that pillars or ribs of coal be left to protect the surface, their removal constituted negligence entitling the surface owner to damages for the loss occasioned thereby; that defendant could remove no more coal than was reasonably consistent with the preservation of plaintiff's property; and if the surface could be preserved by substituting artificial supports, then the coal could all be removed. See also note upon ''liability for removal of lateral or subjacent support of land in its natural condition,'' in 68 L. R. A. 673.

It will be seen that the reservation in the deed in Williams v. Hay, *supra*, is very much like the language relied upon by appellant in the deed from John Seitz to it. Under the principles announced in that and the other causes above discussed, we conclude that John Seitz and his devisee, the appellee here, were not deprived of the right of surface support by the language of that deed. It follows that the instructions on that subject, requested by appellee and given by the court, were not erroneous.

The forty acres in question lie on the east side of a highway between the villages of Cable and Sherrard and immediately south of another highway, just north of which latter highway were other lands, the surface of which was owned by one Sherrard and the mining rights thereunder by appellant. The house, barn and other farm buildings of appellee were situated in the northwest corner adjacent to the two highways and stood upon high ground which descended rapidly to the highways. The east and west highway was about one hundred feet north of the house and about twenty feet below the surface of the ground upon which the house stood. The cracks through the foundation of the house and barn and in the cellar and cistern were to some extent parallel with the east and west road. Appellant contended that these cracks and the injury to the soil, under and near the farm buildings, were not caused by its mining of coal underneath that tract, as the declaration stated, but were caused by the removal of the coal and pillars underneath the Sherrard tract immediately north thereof and the subsidence of that soil, which caused the surface of appellee's land, where the buildings were, to slide down hill and thus crack and disturb the soil by the removal of the lateral support of that hillside by the Sherrard land, and that this was not the act charged against it in the declaration and therefore appellee could not recover for the injuries done to the buildings and the land immediately adjacent thereto. The vein of coal was about

four feet thick and about one hundred and fifty feet beneath the surface. Appellee's proof tended to show that during 1901, 1902, 1903 and into 1904, shots and the rattling of coal were frequently heard beneath the house and that, upon these cracks opening underneath the house in 1902, gas and noxious odors came up. Appellant repaired the foundations of the house and barn and filled up the cracks in the cellar and cistern in May, 1902. Appellee's proof was to the effect that a short time thereafter further cracks appeared in foundation and soil, showing further settling of the surface. Appellant offered proof of the following facts tending to show that appellee's evidence upon this subject could not be true. Appellant proved that its shaft was located some considerable distance south of this land; that it excavated a main hauling way substantially north from its shaft and under this land and the Sherrard land; that it drove entries to the right and left under these tracts, and rooms off of these entries, and first removed about one-half of the coal, and left the rest of the coal in pillars supporting the soil; that when it had gone as far north as it desired or had the right to mine, it began at the northern extremity and dug out the pillars and removed the rest of the coal, permitting the surface of the Sherrard land to subside, and did this to the center of the highway running east and west just north of appellee's land; that it left the pillars undisturbed under a block about three hundred or three hundred and twenty feet square in the northwest corner of appellee's forty acre tract, being the part whereon said buildings were located, and did not disturb those pillars; that it then removed the rest of the pillars in the same way underneath the rest of these forty acres; that this work was completely finished as to the vicinity where these buildings stood by January 4, 1901; and that from that time on it was not possible for appellant's servants or any one else to enter that part of the mine in said block whereon appellee's buildings were, and that no noise

of blasting or rattling of coal thereunder could have
been heard thereafter that day. The issues raised by
this conflicting testimony were decided by the jury in
favor of appellee and that decision was approved by
the trial judge, and we see no reason why a decision
upon those subjects either way should be disturbed by
this court. It is conceded, as we understand the proof,
that the surface of the rest of these forty acres, except
the immediate vicinity of the farm buildings, was let
down by the removal of the pillars, and some cracks
and ridges and depressions in the surface were caused
thereby. If we are right in our view of the meaning
and effect to be given to the deed, then plaintiff has a
cause of action.

The court ruled during the trial that plaintiff could
only recover for the diminution in the value of the land
caused by the acts of appellant prior to December 26,
1902, the date when this suit was begun. Notwith-
standing that ruling one or more witnesses for appel-
lee testified in chief that the cracks in the foundations
of the buildings which re-appeared after the repairs
therein made by appellant in May, 1902, still con-
tinued at the time of trial in January, 1908. Appel-
lant offered to prove that these foundations had never
been repaired after May, 1902, and then sought to
prove the condition of these foundations and buildings
a few weeks before the trial, for the purpose of show-
ing that the conditions after May, 1902, testified to by
appellee's witnesses, did not then exist, from which
offered evidence appellant evidently expected to ask
the jury to infer, either that the testimony introduced
by appellee as to these conditions was not true, or
that these conditions were not permanent. The court
refused to admit this testimony, though perhaps one
or two answers to that effect did creep in. Appellee
was then allowed to show in rebuttal that these cracks
in the foundations still existed at the time of the trial.
Appellant contends that these rulings against it were
erroneous. A defendant can seldom know that it is

to be charged with misconduct or negligence till the suit is brought and the declaration filed and the injury is therein described, and it may not always be able to bring witnesses who can testify to the condition existing before the suit was begun.  The defendant must necessarily call witnesses who examine the premises after the suit has brought its attention to what is alleged against it.  The objection here seems to have been that these examinations were made several years after the suit was begun; but as the claim in the declaration was that the injuries were permanent, and as appellant offered to show that no repairs had been made since May, 1902, we are of opinion that this evidence of the later condition of the property should have been admitted to be considered by the jury for whatever they deemed it worth, and as tending to refute the proof introduced by appellee.

This evidence, however, would only have gone to the amount of damages which the appellee was entitled to recover.  The buildings were small, low and very old. The land was naturally very rough and uneven.  We are satisfied from an examination of the evidence that in any view of the case the verdict was excessive.  In view of the fact that appellee clearly has a cause of action, we conclude that if appellee will remit one-half of the judgment, justice will be done between the parties by affirming it in the sum of $600.

This opinion will be lodged with the clerk before filing and the attorneys will be notified thereof by the clerk.  If within seven days thereafter, appellee files a *remittitur* of $600 the judgment will be affirmed in the sum of $600 at the costs of appellee.  If such *remittitur* is not filed, the judgment will be reversed and the cause remanded for a new trial.

Thereafter appellee filed herein a *remittitur* of $600 and the judgment is therefore affirmed in the sum of $600 at the costs of appellee.

*Affirmed upon remittitur.*