# CASES

## ARGUED AND DETERMINED

### IN THE

# COURTS of APPEALS of OHIO

---

THE UNITED STATES COAL CO. *v.* THE WAYNE COAL CO.

*Lateral support — Mines and mining — Stripping and underground mining processes — Injunction lies, when.*

The plaintiff and defendant are both engaged in mining coal, and are respectively the owners of adjoining properties derived from a common grantor. The plaintiff employs the underground method of mining, while the defendant uses the process known as "stripping," and in conducting its operations has removed the surface over its portion of the vein of coal up to a part of the plaintiff's property line. *Held:* That the plaintiff has the right to the lateral support of the surface contiguous to its own premises, and the further removal of such surface will be enjoined where it is shown that such removal materially affects the lateral support of the plaintiff and thereby endangers its mining operations.

(Decided June 22, 1919.)

APPEAL: Court of Appeals for Jefferson county.

*Mr. A. C. Lewis; Mr. L. C. Kerr* and *Messrs. Henderson, Quail, Siddall & Morgan,* for plaintiff.
*Mr. W. R. Alban* and *Mr. Dio Rogers,* for defendant.

METCALFE, J. The plaintiff in this case seeks to enjoin the defendant from conducting certain min-

ing operations which plaintiff claims work an injury to its property.

The plaintiff is engaged in mining coal by the process known as "underground mining"; the defendant is engaged in mining coal, but by a process entirely different from that used by the plaintiff company, known as the "stripping process."

In 1900 one James Hubler and his wife executed and delivered to Robert E. Rhodes and Morris A. Bradley a warranty deed for all minable coal in what is known as the No. 8 or Pittsburg Vein of coal underlying their farm in Wayne township, Jefferson county, Ohio.

The superficial area of the amount of coal thus conveyed is included in what is known as the Van Atta Survey, and contains about ninety-seven acres of land.

The deed also granted to Rhodes and Bradley an uninterrupted right of entry upon the lands of the grantors, at such points and in such manner as might be deemed necessary to conduct mining operations, convey supplies to the mine and carry away coal therefrom, and also contained a waiver of any damages arising from the occupancy of the premises by the grantees and the use thereof for mining.

It also conveyed the right of mining and removing through the premises of the grantors, other than those granted by deed, coal which might be mined from other lands owned by the grantees.

In 1902 Rhodes and Bradley sold and conveyed to the plaintiff all of their interest in the lands in question, and the plaintiff is still the owner thereof,

but at present is not conducting any mining operations thereon.

The Wayne Coal Company, the defendant, afterwards became the owner of other lands owned by the original grantors of the plaintiff, the Hublers, and is conducting mining operations thereon by what is known as the "stripping process."

The method employed by the defendant is to remove the surface over the vein of coal with a steam shovel, thereby exposing the vein and permitting the use of machinery in taking out the coal; and in conducting their operations they have stripped the surface and removed the coal from portions of their premises to the survey line of the plaintiff's property.

The defendant has acquired the ownership of a considerable acreage of coal adjoining the premises of the plaintiff, with the right to mine such coal by removing the surface.

It is the claim of the plaintiff that by use of the "stripping process," as employed by the defendant company, the defendant is encroaching upon the rights of the plaintiff, in removing the lateral support from the plaintiff's part of the vein of coal so as to greatly endanger the use of the plaintiff's premises in conducting mining operations thereon.

The defendant has mined up to the line of the so-called Van Atta Survey for a distance of several hundred feet.

The first question here presented is whether or not the operation of mining by the "stripping process," so-called, up to the line of the plaintiff's property, is such a removal of, and weakening of, the lateral support over plaintiff's coal as to en-

danger and render impracticable the mining of coal from plaintiff's premises by the method of mining employed by plaintiff.

The question thus presented is a novel question and so far as we are informed is a question of first inception in the courts of Ohio, and we find no decisions from other states involving the same question. We are left, therefore, to determine the question upon general principles, and upon the authorities governing the questions of the right to lateral support, where the questions at issue were similar or analogous to those of the instant case.

The mining of coal by the "stripping process" has come into practice only within the past few years and could not have been in the minds of the parties when the deed was executed from the Hublers to Rhodes and Bradley, for no such process was known at that time. It does not, however, follow that the defendant has not a right to use that process or any other new or improved method of mining by machinery or otherwise, which has come into use.

The parties here stand in the same position as the parties to the original deed. The rights of each are neither greater nor less than the rights of the parties to that conveyance. The idea that the surface of the land outside of that conveyed to the plaintiff would be removed to a depth of thirty feet or more could not have been contemplated by the parties.

The grantees of the deed supposed that they were purchasing all of the coal underlying the grantor's premises, which, by the processes of mining then known, was considered minable coal, the

balance of the coal being considered unminable because of the shallowness of the surface above it.

It seems to us fairly shown by the evidence that such removal of the surface up to the line of the plaintiff's property is, in effect, a removal of the lateral support from the plaintiff's property in conducting mining operations, which, if carried out to the extent of removing the surface up to the plaintiff's land around its entire property, would be absolutely destructive of the plaintiff's right, so that the extent to which the defendant carries on its operation up to the plaintiff's line leaves it only a question of degree as to the injury done to the plaintiff.

The removal for a very small distance along the line of the plaintiff's property might not be injurious to the plaintiff at all for the reason that the remaining surface upon the same side would be sufficient to furnish the necessary support, but the defendant in this case has removed that support for a distance of several hundred feet, and contemplates, as we understand from the evidence, removing it for a much greater distance. We have no doubt from the evidence in this case that such removal would be a material injury to the plaintiff.

It is urged on the part of the defendant, that, as the plaintiff company is not now using its property for mining purposes, any injury which might result from the defendant's operation does not give rise to a present cause of action, but would give rise only to a cause of action in the future when the damage actually occurs. We think this position is untenable.

If the plaintiff is not now exercising its right to use its premises for mining purposes, it has purchased the premises for that very purpose; and can it be said that it is not a present injury if the acts of the defendant will effectually prevent the use of the plaintiff's premises in the future, or so weaken its lateral supports as to endanger the use of the premises for that purpose?

We think the plaintiff is entitled to the relief asked for, and in this judgment we think we are sustained by many well-considered cases.

1 High on Injunctions (4 ed.), Section 753, says:

"The right to lateral support is regarded as an incident to the ownership of land, and its infringement has been considered as a nuisance which equity may enjoin. Thus, the removal and excavation of earth upon adjacent premises in such manner as to endanger the stability of complainant's soil and fences, by removing their lateral support, will be enjoined."

And Section 667 of the same work says:

"While diligence in the assertion of his rights is indispensable on the part of one who seeks the aid of equity for the prevention of waste, the utmost degree of promptitude is exacted in cases of waste in mines, owing to the peculiar nature of the property."

The author further illustrates these principles in Sections 850 and 852 of the same work.

In *Burgner* v. *Humphrey*, 41 Ohio St., 340, it is held that where the owner of the land conveys by lease the underlying coal on his premises, with the right to remove the same, the lessee will not be entitled to remove the whole of the coal so as to

endanger the support to the surface. On page 352 the court say:

"It seems to be well settled, that when one owning the whole fee, grants the minerals, reserving the surface to himself, his grantees will be entitled only to so much of the minerals, as he can get without injury to the superincumbent soil, unless the language of the instrument clearly imports that it was the intention of the grantor to part with the right to subjacent support. * * * The owner has a natural right to the use of his land, in the situation in which it was placed by nature, and if the surface of the land and the minerals beneath belong to different owners, the owner of the surface is entitled to have it supported by the underlying mineral strata, and, an action may be maintained against the owner of the minerals, for the damages sustained by the subsidence. Each owner must so use his own as not to injure the property of the other."

If the owner of the minerals has no right to injuriously affect the rights of the owner of the surface, the converse of the proposition must be equally true, that the owner of the surface can not destroy it to the extent of seriously injuring and endangering the rights of the owner of the minerals.

The defendant stands in the shoes of its grantor, the common grantor of itself and the plaintiff, and where a continuance of its acts will work a serious injury to the property of the plaintiff we think plaintiff is entitled to have such acts restrained. *Elliot* v. *N. E. Ry. Co.,* 10 H. L. C., 334, 11 Eng. Rep. Re., 1055; *Caledonia Ry. Co.* v. *Sprot,* 1

Pater. (Sc. App.), 633, 17 Eng. Ru. Cas., 696; *Keating* v. *Cincinnati,* 38 Ohio St., 141; *Joyce* v. *Barron, Treas.,* 67 Ohio St., 264; *Murray* v. *Pannaci,* 64 N. J. Eq., 147, 154; *Simon* v. *Nance,* 45 Tex. Civ. App., 480, 100 S. W. Rep., 1038; *Belden* v. *Franklin,* 8 C. C., N. S., 159, 28 C. C., 373; *Catron* v. *South Butte Mining Co.,* 181 Fed. Rep., 941; *Seitz* v. *Coal Valley Mining Co.,* 149 Ill. App., 85; *Big Six Development Co.* v. *Mitchell,* 138 Fed. Rep., 279, 1 L. R. A., N. S., 332, and *Collins* v. *Gleason Coal Co.,* 140 Ia., 114, 18 L. R. A., N. S., 736.

The defendant has an undoubted right to use the "stripping process" in conducting its mining operations and should only be enjoined from removing the surface so near to the plaintiff's property line as to materially affect the plaintiff's lateral support, and, while the fixing of the line up to which the defendant may mine must of necessity be somewhat arbitrary, we are of the opinion that under the evidence thirty-five feet will be sufficient to afford the plaintiff protection.

*Injunction granted accordingly.*

POLLOCK and FARR, JJ., concur.