# STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## NO. 2024 KA 0134

## STATE OF LOUISIANA

## VERSUS

## DANIEL MARTINEZ

Judgment Rendered: _____ DEC 3 0 2024 _____

\* \* \* \* \*

On Appeal from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Trial Court No. 16472022

Honorable Raymond S. Childress, Judge Presiding

\* \* \* \* \*

Butch Wilson
Matthew Caplan
Warren L. Montgomery
J. Collin Sims
Covington, LA

Attorneys for Appellee,
State of Louisiana


Roger W. Jordan, Jr.
New Orleans, LA

Attorney for Defendant-Appellant,
Daniel Martinez

\* \* \* \* \*

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

Theriot, J. concurring with reasons

**HESTER, J.**

The defendant, Daniel Martinez, was charged by bill of information with armed robbery with the use of a firearm (count one), a violation of La. R.S. 14:64 and 14:64.3(A), and possession of a firearm or carrying a concealed weapon by a person convicted of certain felonies (count two), a violation of La. R.S. 14:95.1, and pled not guilty.[1] After a trial by jury, he was found guilty as charged on each count. The trial court denied his motions for new trial and post-verdict judgment of acquittal and sentenced him to fifty years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence on count one, and to ten years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence on count two, to be served concurrently. The trial court further denied the defendant's motion to reconsider sentence.

The State filed a habitual offender bill of information, seeking to enhance the sentence on count one, and the defendant was adjudicated a second felony habitual offender.[2] The trial court vacated the original sentence on count one and resentenced the defendant to fifty years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. The trial court denied the defendant's subsequent motion to reconsider sentence. The defendant now appeals, raising five assignments of error. For the following reasons, we affirm the convictions, habitual offender adjudication, and sentences.

## STATEMENT OF FACTS

On June 29, 2021, Paul Chamness was working at Danny & Clyde's, a convenience store and gas station in Mandeville, when he was robbed at gunpoint.

---

[1] The predicate offense on count two consists of a conviction of possession of a Schedule II controlled dangerous substance on January 30, 2020, in Hillsborough County, Florida.

[2] The defendant stipulated to his status as a habitual offender in exchange for an agreement to maintain the fifty-year sentence.

Chamness was closing the store for the night when a Hispanic male came in and asked for a pack of cigarettes. The individual went up to the counter, pulled a bandana over his face, put a bag on the counter, pulled out a gun, and told Chamness to put all of the store's money in the bag. Chamness put the money in the bag, waited for the perpetrator to leave, called 911, and gave a description of the man and the gun.

The perpetrator was captured on store video surveillance cameras driving up in a white Honda Pilot, entering the store, and committing the robbery. The case was assigned to Detective Jordan Smith of the St. Tammany Parish Sheriff's Office (STPSO), who observed surveillance footage showing a partial license plate number for the Honda Pilot and located it in St. Martin Parish, where it had been involved in a crash about two or three hours after the robbery. Evidence obtained from the vehicle linked the defendant to the armed robbery, and he was subsequently arrested for the instant offenses.

## ASSIGNMENT OF ERROR NUMBER ONE

In assignment of error number one, the defendant argues the evidence presented at trial was insufficient to support the convictions. He specifically argues the circumstantial evidence was insufficient to prove his identity as the perpetrator, or a nexus between himself and the recovered firearm.

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for sufficiency of the evidence to support a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime, and the defendant's identity as the perpetrator of that crime, beyond a reasonable doubt. See La. Code Crim. P. art. 821(B); **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789,

3

61 L.Ed.2d 560 (1979); **State v. Currie**, 2020-0467 (La. App. 1st Cir. 2/22/21), 321 So.3d 978, 982.

The **Jackson** standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. **State v. Welch**, 2019-0826 (La. App. 1st Cir. 2/21/20), 297 So.3d 23, 27, writ denied, 2020-00554 (La. 9/29/20), 301 So.3d 1193. When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. **State v. Coleman**, 2021-0870 (La. App. 1st Cir. 4/8/22), 342 So.3d 7, 12, writ denied, 2022-00759 (La. 11/21/23), 373 So.3d 460.

When analyzing circumstantial evidence, La. R.S. 15:438 provides the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. **Welch**, 297 So.3d at 27.

Armed robbery is "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. R.S. 14:64(A). Armed robbery is a general intent crime. In general intent crimes, the criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal. See La. R.S. 14:10(2); **State v. Huey**, 2013-1227 (La. App. 1st Cir. 2/18/14), 142 So.3d 27, 30, writ denied, 2014-0535 (La. 10/3/14), 149 So.3d

4

795, cert. denied, 574 U.S. 1198, 135 S.Ct. 1507, 191 L.Ed.2d 443 (2015). When the dangerous weapon used in the commission of the armed robbery is a firearm, La. R.S. 14:64.3(A) mandates that the offender be imprisoned at hard labor for an additional five-year period, without benefit of parole, probation, or suspension of sentence.

Pursuant to La. R.S. 14:95.1, it is unlawful for any person who has been convicted of certain felonies to possess a firearm. To prove a violation of La. R.S. 14:95.1, the State must prove: (1) the defendant's status as a convicted felon; and (2) that the defendant was in possession of a firearm. The State must also prove that ten years have not elapsed since the date of completion of the punishment for the prior felony conviction. La. R.S. 14:95.1(C). **State v. St. Cyre**, 2019-0034 (La. App. 1st Cir. 12/19/19), 292 So.3d 88, 113, writ denied, 2020-00142 (La. 5/26/20), 296 So.3d 1063. Possession of a firearm by a convicted felon is also a general intent crime. **State v. Hills**, 2010-1521 (La. App. 1st Cir. 3/25/11), 2011 WL 1103455, *7 (unpublished), writ denied, 2011-1120 (La. 11/14/11), 75 So.3d 940.

The general intent to commit the offense of possession of a firearm by a convicted felon may be proved through the actual possession of the firearm or through the constructive possession of the firearm. **State v. Badeaux**, 2017-0027 (La. App. 1st Cir. 6/2/17), 2017 WL 2399365, *2 (unpublished), writ denied, 2017-1240 (La. 6/15/18), 257 So.3d 685. Constructive possession occurs when the firearm is subject to the offender's dominion and control. Dominion and control over a weapon are sufficient to constitute constructive possession even if the control is only temporary in nature. Mere presence of a defendant in the area of the contraband or other evidence seized alone does not prove that he exercised dominion and control over the evidence and therefore had it in his constructive possession. **State v. Johnson**, 2003-1228 (La. 4/14/04), 870 So.2d 995, 998. The State must prove that the offender was aware that a firearm was in his presence and that the offender had

5

the general criminal intent to possess the weapon. Guilty knowledge may be inferred from the circumstances of the transaction and proved by direct or circumstantial evidence. **St. Cyre**, 292 So.3d at 113-14.

In this case, the defendant primarily challenges the evidence regarding his identity as the perpetrator. When the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. A positive identification by only one witness is sufficient to support a conviction. **State v. Bessie**, 2021-1117 (La. App. 1st Cir. 4/8/22), 342 So.3d 17, 23, writ denied, 2022-00846 (La. 9/20/22), 346 So.3d 802.

At trial, Chamness testified he saw the perpetrator when he walked into the store holding a bag. He observed the individual had "swirls" tattooed on his face, and was wearing a gray Puma sweatshirt, a bandana around his neck, and a red sports cap. As Chamness walked past him to get the pack of cigarettes he wanted, the perpetrator pulled up his bandana to cover his face, pulled out a gun from his pocket, and pointed it at Chamness. Chamness described the gun used by the perpetrator as a "subcompact gun . . . spray-painted blue on the top." The perpetrator repeatedly asked for the money underneath the cash register; however, Chamness did not have access to the safe located below the registers. Chamness testified he gave him all the money from both cash registers, including coin rolls.

Detective Julie Boynton of the STPSO was temporarily assigned to investigate the robbery. She responded to the scene that night and interviewed Chamness. She further watched interior and exterior store surveillance footage, which showed a vehicle driving up to a gas pump, and someone exiting the vehicle and entering the store with their face uncovered. She noted Chamness's description of the perpetrator, including his facial tattoo and clothing, was consistent with her

6

observations of the footage.[3]  Deputy Jonathan Smith, a STPSO crime scene technician, was dispatched to Danny & Clyde's and collected fingerprints from the interior of the double glass doors and swabbed the exterior and interior door handles for DNA.

Within three hours of the robbery at Danny & Clyde's, Trooper Jameson Jordan of the Louisiana State Police (LSP) responded to a three-car crash on I-10 in St. Martin Parish.  One of the vehicles involved in the crash, a white Honda Pilot with a license plate number ending in 8777, was driven and solely occupied by the defendant, a Hispanic male wearing a gray Puma hoodie sweatshirt and blue shorts. The defendant was airlifted to a hospital.

The Honda Pilot was towed off the interstate and inventoried, at which point a loaded firearm and cash were located on the front passenger floorboard.  Based on procedure, Trooper Jordan listed the items found in the vehicle but allowed the items to remain in the vehicle, as it was stored at a secure wrecker yard in Breaux Bridge. LSP Trooper Leon Defelice obtained and executed a search warrant for the Honda and photographed its contents.  In addition to the loaded firearm – a Smith and Wesson semiautomatic with blue spray paint on the top – Trooper Defelice photographed the other contents of the car, including a red Redskins cap with a yellow brim and a black and white patterned bag located on the front passenger floorboard; a bandana on the front passenger seat; and a coin roll in the passenger door compartment.  At the time, Trooper Defelice was not aware of the robbery at Danny & Clyde's or any evidentiary value of the items.

After Detective Smith took over the investigation of the robbery, he examined the surveillance footage to look for more details.  He noted the perpetrator, who had

---

[3] Emanuel Jones, a disgruntled employee who quit the morning of the robbery, became a person of interest.  Detective Boynton obtained a photograph of Jones, which was introduced into evidence and showed that Jones did not appear to be the person depicted in the footage.  Jones's phone records were also obtained, and the phone records do not indicate that Jones was in the area at the time of the robbery.  There was no evidence to link Jones to the offense.

a medium complexion, was the lone occupant of the Honda Pilot. Detective Smith observed the perpetrator exit the vehicle holding a black bag[4] and wearing a red Redskins cap with a yellow brim, a gray sweatshirt with black writing on it, and dark-colored shorts. The surveillance video entered into evidence showed the perpetrator entering the store, approaching the counter, covering his face with a bandana, putting the bag on the counter, and pulling out a gun.

Detective Smith also obtained footage from the Chevron across the street from Danny & Clyde's, which allowed him to get a better look at the license plate ending in 8777, and Detective Smith said it was likely a Texas plate. He used the partial license plate number to conduct a query through the Automated License Plate Reader system, from which he obtained the full license plate number PKT8777. He then tracked its travel history before and after the robbery and got the name and photograph of the registered owner, Jose Gonzales. The vehicle was reported stolen on June 25, 2021, four days before the robbery. Detective Smith noted Gonzales did not appear to be the person depicted in the surveillance footage at Danny & Clyde's.

After conducting a system search, Detective Smith learned of the vehicle's involvement in the crash in St. Martin Parish subsequent to the robbery and that the vehicle was recovered by the LSP. Detective Smith contacted the LSP and requested Trooper Jordan's body-camera footage from the scene of the crash, the photographs taken during the execution of the search warrant for the vehicle, and the report from the crash investigation. The footage from the scene of the crash depicts the defendant first in the Honda and then on a stretcher wearing a gray Puma hoodie and blue shorts, with visible tattoos. Based on his investigation, Detective Smith authored the application for the warrant for the defendant's arrest. The defendant was subsequently arrested in Florida by the U.S. Marshals Service.

---

[4] The surveillance footage shows the bag was solid black on one side and had a black and white pattern on the other side.

Detective Smith viewed the defendant in LSP and STPSO booking photographs and in person after his arrest and testified the defendant's appearance was consistent with the perpetrator depicted in the robbery footage at Danny & Clyde's. He specifically noted the defendant had a visible tattoo above his left eye, which was consistent with Chamness' description of "swirls" in the tattoo on the defendant's face. He further confirmed the white Honda Pilot operated by the defendant when it was involved in the crash was the same vehicle depicted in surveillance footage and still photographs at Danny & Clyde's. Although he had been in law enforcement since 2008, Detective Smith testified that the firearm recovered in this case was the first and only one he had ever seen with blue spray paint on it.

After the defendant was arrested, Detective Boynton obtained and executed a search warrant for the defendant's DNA. However, Detective Smith testified he did not follow up on the DNA and fingerprint samples collected in this case to see if the samples had been tested.[5]

The defendant did not testify at trial. On appeal, he contends the tattoos shown on surveillance footage were blurry. He notes Gonzales was never contacted by the police, and there was no information as to when the photograph of Gonzales that was introduced into evidence was taken. He further notes the DNA collected from Danny & Clyde's was not tested, no DNA samples or fingerprints were taken from the car, the evidence found in the car was not seized, and Chamness was not shown a lineup. Thus, he argues the evidence was not sufficient to prove his identity as the perpetrator. Additionally, the defendant argues there is no evidence he had any

---

[5] Regarding the lack of fingerprint or DNA evidence, Kortnie Larrison, a former Jefferson Parish Office Crime Laboratory latent print examiner, testified as an expert in fingerprint processing and comparison. Larrison discussed factors that reduce the likelihood of collecting fingerprint impressions of evidentiary value, such as gloves, dry skin, and textured or heavily touched surfaces. Deputy Smith similarly testified that objects with rough surfaces like firearms are generally not likely to yield useful, liftable fingerprint evidence. He noted he had never retrieved prints suitable for comparison from a gun.

knowledge that the recovered firearm was in the vehicle. Thus, he argues the evidence was insufficient to prove he ever possessed the firearm.

On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. **Bessie**, 342 So.3d at 23. Further, an appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to and rationally rejected by the fact finder. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. **Welch**, 297 So.3d at 29.

We find the jury rationally rejected the defendant's hypothesis of innocence implicating Gonzales, the registered owner of the Honda Pilot. Initially, we note the jury saw the photograph of Gonzales and heard police testimony indicating there was no evidence linking Gonzales to the robbery. Moreover, while there was no DNA or fingerprint evidence, we find the evidence presented to the jury in this case supports the identification of the defendant as the armed robber, and a finding of both actual and constructive possession of the recovered gun. See **State v. Clayton**, 2014-0100 (La. App. 1st Cir. 12/23/14), 2014 WL 7332116, *10 (unpublished), writ denied, 2015-0152 (La. 11/16/15), 184 So.3d 23 (finding the defendant, identified as the shooter at a barbershop, had actual possession of the gun the date of the shooting and constructive possession of the gun when arrested three days later).

Specifically, the jury heard Chamness's testimony describing a unique tattoo on the perpetrator's face and the gun used to commit the offense as being spray-painted blue on the top. The jury saw surveillance footage showing the perpetrator's face and attire, as he pulled out a gun and committed the robbery. The jury further saw body camera footage of the defendant after his involvement in a crash, wearing the same clothing worn during the armed robbery and operating the vehicle identified as the one shown in the robbery surveillance footage. Photographs taken

10

by crash scene investigators showed the vehicle contained a bandana, a red Redskins cap, a black and white bag, and a gun with blue paint on the top.

The jury apparently accepted Chamness's testimony, the incriminating store surveillance footage in which the perpetrator's face is fully shown, and the evidence from the crash scene. In addition to seeing photographs of the defendant in evidence, the jury also saw the defendant sitting in the courtroom during the trial.[6] The jury could have rationally concluded it was the defendant captured on video surveillance arriving at, entering, and robbing the store using the gun in evidence. Thus, the jury could have rationally found that the defendant was in actual possession of the gun at the time of the robbery.

At the time of the crash, the defendant was the sole occupant of the (wrecked) Honda Pilot. The gun was found on the front passenger floorboard, a location visible to the defendant and within the defendant's reach. Thus, the jury could have also rationally found that the defendant had constructive possession of the gun. See Johnson, 870 So.2d at 998-1000 (finding constructive possession of a gun found on the floorboard of a vehicle where the defendant's feet had been though the defendant did not own the vehicle).

In reviewing the evidence presented at trial, we cannot say the jury's determination was irrational under the facts and circumstances presented. See State v. Ordodi, 2006-0207 (La. 11/29/06), 946 So.2d 654, 661-62. After a thorough review of the record, we are convinced a rational trier of fact, viewing the evidence in the light most favorable to the State, could find the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of armed robbery with a firearm and possession of a firearm by a

---

[6] As requested by the State, the defendant displayed his facial, hand, and shin tattoos to the jury.

person convicted of certain felonies. Thus, we find no merit in assignment of error number one.

## ASSIGNMENT OF ERROR NUMBER TWO

In assignment of error number two, the defendant argues the trial court erred in allowing the State to introduce evidence of a traffic fatality. He argues the evidence consisted of prejudicial other crimes evidence, and its admission was not harmless.

Evidence of other crimes, acts, or wrongs is generally not admissible because of the substantial risk of grave prejudice to the defendant. It is well settled that courts may not admit evidence of other crimes to show the defendant as a man of bad character who has acted in conformity with his bad character. **State v. Calloway,** 2018-1396 (La. App. 1st Cir. 4/12/19), 276 So.3d 133, 147, writ denied, 2019-00869 (La. 1/20/21), 308 So.3d 1164. However, other crimes evidence is admissible "when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." La. Code Evid. art. 404(B)(1)(a).

For other crimes evidence to be admissible under the integral act exception (formerly known as res gestae), the evidence must bear such a close relationship with the charged crime that the indictment or information as to the charged crime can fairly be said to have given notice of the other crime evidence as well. This exception incorporates a rule of narrative completeness without which the State's case would lose its narrative momentum and cohesiveness. Such evidence forms part of the res gestae when the crimes are so related and intertwined with the charged offense that the State cannot accurately present its case without reference to it. The evidence completes the story of the crime by providing context to the events. See **State v. Taylor,** 2001-1638 (La. 1/14/03), 838 So.2d 729, 741, cert. denied, 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004); **State v. Swan,** 2018-0320 (La.

12

App. 1st Cir. 12/17/18), 2018 WL 6599023, *15 (unpublished), writ denied, 2019-0151 (La. 5/20/19), 271 So.3d 1270.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. Code Evid. art. 401. All relevant evidence is admissible except as otherwise provided by the Code of Evidence or other laws. Evidence which is not relevant is not admissible. La. Code Evid. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. Code Evid. art. 403. A trial court's determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion. See **Calloway**, 276 So.3d at 147-48.

Herein, the State filed pretrial notice of its intent to introduce other crimes evidence. The State indicated evidence would show the defendant was at fault in a three-vehicle traffic accident, which resulted in a fatality. The State also noted the LSP suspected the defendant to be involved in narcotics distribution, and an executed search warrant revealed the evidence presented in the instant case, along with methamphetamine residue.

At the hearing on the motion, the State agreed it would not introduce any evidence regarding methamphetamine, and would only introduce evidence of the car crash. As pertinent evidence in this case was obtained as a result of the car crash, the trial court ruled the collision admissible to explain the manner in which the evidence was recovered and its chain of custody.

The defendant argues on appeal that the prejudicial effect of the other crimes evidence, alleging he killed someone while fleeing the area, impermissibly inflamed the jury. He further argues the challenged evidence had no perceived relevance and

13

did not constitute res gestae as the State could have presented its case without reference to it.[7]

First, we note the pretrial notification filed by the State was broader than the contested evidence actually presented at trial. As the State agreed at the hearing and the defendant concedes on appeal, there was no evidence regarding any drugs being present in the vehicle. Further, while the accident was described as involving a fatality, there was no testimony to indicate the defendant was at fault in the accident. Thus, any criminal or wrongful nature of the evidence was either not established or very vague.

Moreover, we find the evidence of the crash and the items found in the vehicle constituted evidence of the instant offenses, not external acts. The defendant was shown just a few hours after the instant robbery on a stretcher after being removed from the vehicle involved in the crash and the robbery, wearing the same attire as worn in the robbery. The vehicle itself and the evidentiary items found therein were consistent with the depictions in surveillance footage of the instant robbery. The contested evidence was properly admitted for the sake of narrative completeness. The State could not have accurately presented its case without the reference to the crash and vehicle recovery. Accordingly, we find no error in the admission of the evidence of the crash. Assignment of error number two lacks merit.

## ASSIGNMENT OF ERROR NUMBER THREE

In assignment of error number three, the defendant argues the State committed a discovery violation by failing to timely disclose its intent to present a photograph of Jose Gonzales, the owner of the Honda Pilot, during the trial. He argues the

---

[7] The defendant cites a portion of the State's closing argument mentioning his involvement in the crash causing a fatality. Initially, we note the jury was instructed that opening and closing arguments and comments by the lawyers for either side do not constitute evidence. Moreover, the defendant did not object during the State's closing, nor does the defendant seem to be directly challenging any statement in closing on appeal. A contemporaneous objection is required to preserve an error for appellate review. See La. Code Crim. P. art. 841(A). Accordingly, any complaint regarding this portion of the State's closing argument is not properly before this court.

discovery violation prejudiced his defense and warrants the reversal of the convictions. He further argues the trial court abused its discretion in denying a mistrial.

Photographs that illustrate or shed light upon any fact or issue in the case or that are relevant to describe the person, place, or thing depicted, are generally admissible, provided their probative value outweighs any prejudicial effect. **State v. Allen**, 2008-2271 (La. App. 1st Cir. 5/8/09), 2009 WL 1272562, *8 (unpublished), writ denied, 2009-1440 (La. 2/12/10), 27 So.3d 844. Under La. Code Crim. P. art. 718, upon written motion of the defendant, the State is required to produce documents or tangible objects, including photographs, within its possession, custody, or control that are intended for use as evidence at trial. Under La. Code Crim. P. art. 729.3, the State is under a continuing obligation to promptly disclose additional evidence that may be discovered or that it decides to use as evidence at trial.

The purpose of pretrial discovery procedures is to eliminate unwarranted prejudice to a defendant which could arise from surprise testimony. **State v. Elie**, 2005-1569 (La. 7/10/06), 936 So.2d 791, 802. Discovery procedures enable a defendant to properly assess the strength of the State's case against him in order to prepare his defense. **State v. Herron**, 2003-2304 (La. App. 1st Cir. 5/14/04), 879 So.2d 778, 787. If a defendant is lulled into a misapprehension of the strength of the State's case through the failure of the prosecution to timely or fully disclose and the defendant suffers prejudice, basic unfairness results which constitutes reversible error. **State v. Harris**, 2000-3459 (La. 2/26/02), 812 So.2d 612, 617.

In the event of a discovery violation, the court may order the party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate. La.

15

Code Crim. P. art. 729.5(A). The trial judge is given wide latitude in choosing the appropriate sanction provided in La. Code Crim. P. art. 729.5. **State v. Noble**, 2018-0147 (La. App. 1st Cir. 9/21/18), 2018 WL 4520464, *7 (unpublished). The State's failure to comply with discovery requests does not constitute reversible error unless actual prejudice results to the defendant. **State v. Griffin**, 2023-0360 (La. App. 1st Cir. 1/30/24), 384 So.3d 352, 357-58.

Herein, defense counsel moved to prevent the State from introducing a photograph of Jose Gonzales shown to defense counsel for the first time on the morning of the trial. After noting he understood the State just obtained the photograph that day, defense counsel argued its admission would be prejudicial and asked the court to exclude it. The State argued it had an obligation to respond to the hypothesis of innocence presented by the defendant in opening statement that Gonzales was the real perpetrator of the robbery in this case. The trial court found the State had the right to present evidence in response to the defendant's hypothesis implicating Gonzales.

As noted, the defendant argues on appeal the trial court erred in not granting a mistrial under La. Code Crim. P. art. 729.5. However, the record shows the defendant did not move for a mistrial regarding the evidence at issue. Defense counsel only asked the trial court to exclude the photograph and objected to the trial court's ruling finding it admissible. Later, after the State moved to introduce the photograph, defense counsel renewed his objection, without requesting a mistrial.

Moreover, as the trial court reasoned, the photograph in question was highly relevant. Gonzales was the registered owner of the vehicle which was depicted in surveillance footage of the armed robbery and from which the gun was recovered. Thus, the photograph of Gonzales was probative in corroborating that it was the defendant depicted in surveillance footage and to respond to defense counsel's

16

argument that Gonzales could have been the perpetrator.[8] Regarding the timeliness of the disclosure of the photograph, the defendant conceded the State did not obtain the photograph until the morning of the trial. The State obtained and shared the photograph as soon as it was put on notice the photograph would be relevant to refute the defendant's hypothesis of innocence implicating Gonzales. Therefore, we find the State complied with Article 729.5. Further, the evidentiary value of the photograph outweighed any potential prejudice. Thus, we find no error in the trial court's ruling allowing it to be admitted into evidence. Assignment of error number three lacks merit.

## ASSIGNMENT OF ERROR NUMBER FOUR

In assignment of error number four, the defendant argues the trial court erred in denying him the right to present a defense regarding an initial person of interest, Emanuel Jones. He specifically notes the defense sought to introduce evidence of Jones's arrest warrants for simple robbery and aggravated assault with a firearm, and that Jones was a former disgruntled Danny & Clyde's employee.

A criminal defendant's right to present a defense is guaranteed by the Sixth Amendment of the United States Constitution and Article I, § 16 of the Louisiana Constitution. Few rights are more fundamental than a defendant's right to present a defense. **Chambers v. Mississippi**, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). Constitutional guarantees, however, do not assure the defendant the right to admit any type of evidence, only that which is deemed trustworthy and has probative value. **State v. Governor**, 331 So.2d 443, 449 (La. 1976); see **State v. Nixon**, 2017-1582 (La. App. 1st Cir. 4/13/18), 250 So.3d 273, 280, writ denied, 2018-0770 (La. 11/14/18), 256 So.3d 290. Ultimately, questions of relevancy and admissibility of evidence are discretion calls for the trial court.

---

[8] Additionally, we note the defendant had the opportunity to cross-examine testimony relating to the photograph of Gonzales.

Such determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. **State v. St. Romain**, 2020-1072 (La. App. 1st Cir. 10/21/21), 332 So.3d 114, 121.

In this case, the State filed a motion in limine to prevent the introduction of Jones's arrest warrants, noting he was not shown in video footage committing the instant offense and had been eliminated as a suspect. Defense counsel filed an opposition to the motion, arguing the evidence was relevant as to Jones's intent to commit the instant offense. The trial court did not consider the evidence to be of probative value and noted it could confuse the jury.

Based on our careful review of the entire record, we find no reason to disturb the trial court's ruling on the State's motion in limine. The fact that a disgruntled employee was initially a person of interest in the case was presented at trial. Thus, the jury was aware of that fact.

Nonetheless, the jury was also presented with testimony that Jones was ruled out as a suspect, and the jury was shown a photograph of Jones. We agree with the trial court in finding the introduction of any evidence regarding Jones's criminal background unrelated to the instant case would not have had probative value. The fundamental right to present a defense does not require the trial court to admit irrelevant evidence or evidence with such little probative value that it is substantially outweighed by other legitimate considerations. See **St. Romain**, 332 So.3d at 121-22. We find that any probative value of the evidence at issue was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. See La. Code Evid. art. 403; **Nixon**, 250 So.3d at 280 (no violation of the defendant's constitutional right to present a defense by prohibiting testimony from a witness concerning "what she thought she knew about [a potential suspect who was later eliminated as a suspect]."). Thus, assignment of error number four lacks merit.

18

## ASSIGNMENT OF ERROR NUMBER FIVE

In assignment of error number five, the defendant argues the fifty-year sentence imposed by the trial court for the enhanced count of armed robbery was excessive in this case. He further argues the trial court failed to comply with the sentencing guidelines.

The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. **State v. Sepulvado**, 367 So.2d 762, 767 (La. 1979); **State v. Honea**, 2018-0018 (La. App. 1st Cir. 12/21/18), 268 So.3d 1117, 1120, writ not considered, 2019-00598 (La. 8/12/19), 279 So.3d 315. A sentence is constitutionally excessive if it is grossly disproportionate to the severity of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. **State v. Hurst**, 99-2868 (La. App. 1st Cir. 10/3/00), 797 So.2d 75, 83, writ denied, 2000-3053 (La. 10/5/01), 798 So.2d 962.

Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the district court to consider when imposing sentence. While the entire checklist of Article 894.1 need not be recited, the record must reflect that the district court adequately considered the criteria. In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. **State v. Brown**, 2002-2231 (La. App. 1st Cir. 5/9/03), 849 So.2d 566, 569. The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. Remand is unnecessary when a

19

sufficient factual basis for the sentence is shown. **State v. Lanclos**, 419 So.2d 475, 478 (La. 1982); **State v. Graham**, 2002-1492 (La. App. 1st Cir. 2/14/03), 845 So.2d 416, 422. On appellate review of a sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. **State v. Thomas**, 98-1144 (La. 10/9/98), 719 So.2d 49, 50 (per curiam).

Armed robbery carries a sentence of imprisonment at hard labor for not less than ten years nor more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64(B). As a second-felony habitual offender, the defendant's mandatory sentence was not less than one-third the longest term nor more than twice the longest term prescribed for a first conviction. La. R.S. 15:529.1(A)(1) (as amended by 2017 La. Acts, No. 282, § 1). Thus, the defendant's sentencing exposure was thirty-three years to one hundred and ninety-eight years, without benefit of parole, probation, or suspension of sentence. See La. R.S. 14:64(B); La. R.S. 15:529.1(A)(1). The fifty-year sentence was therefore at the lower end of the sentencing range.

In originally imposing a fifty-year sentence, prior to the habitual offender stipulation, the trial court noted it sat through the entire trial and considered the heinous nature of the offenses. The trial court noted the victim, Chamness, testified regarding the impact the offenses had on him, including the fact that he was fearful of losing his life during the robbery. We note Chamness testified he did not feel safe working at the store after the offenses and left his job a month after the robbery. The trial court concluded a fifty-year sentence would be appropriate in this case.

Initially we note it appears the sentence on count two is illegally lenient, as the trial court did not impose the mandatory fine of not less than one thousand dollars

20

and not more than five thousand dollars, pursuant to La. R.S. 14:95.1(B).[9] However, because this potential illegality inures to the defendant's benefit in this case, we elect not to amend or remand for correction of the sentence. See **State v. Price**, 2005-2514 (La. App. 1st Cir. 12/28/06), 952 So.2d 112, 124-25 (en banc), writ denied, 2007-0130 (La. 2/22/08), 976 So.2d 1277. Moreover, considering the nature of the offenses, we find the record adequately shows a factual basis for the challenged sentence. The sentence was not grossly disproportionate to the severity of the offense and, therefore, was not unconstitutionally excessive. Thus, we find the trial court did not abuse its discretion in imposing the sentence. The fifth assignment of error is without merit.

For the above reasons, we affirm the defendant's convictions, habitual offender adjudication, and sentences.

**CONVICTIONS, HABITUAL OFFENDER ADJUDICATION, AND SENTENCES AFFIRMED.**

---

[9] We further note the trial court did not impose a separate consecutive five-year sentence pursuant to the provisions of La. R.S. 14:64.3, though the court did note its intention of taking the enhancement into account in imposing the fifty-year sentence. Regarding the lack of the mandatory fine on count two, we note there is no indication in the record a hearing was held, or the fine was waived, pursuant to the provisions of La. Code Crim. P. art. 875.1.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 KA 0134

STATE OF LOUISIANA

VERSUS

DANIEL MARTINEZ

**THERIOT, J., concurring and assigning reasons.**

While I agree that the occurrence of the motor vehicle accident is relevant to explain the manner in which the evidence was recovered and its chain of custody, I believe that the trial court abused its discretion in permitting testimony relating to the fatality caused by the motor vehicle accident.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. Code Evid. art. 403. Evidence of other crimes, wrongs, or acts committed by the defendant is generally inadmissible because of the substantial risk of grave prejudice to the defendant. However, this evidence may be admissible for other purposes, including when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. See La. Code Evid. art. 404(B)(1); **State v. Calloway**, 2018-1396 (La. App. 1 Cir. 4/12/19), 276 So.3d 133, 147, writ denied, 2019-00869 (La. 1/20/21), 308 So.3d 1164. Even when the other crimes evidence is offered for a purpose allowed under Article 404(B)(1), the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense. **Calloway**, 276 So.3d at 147.

Evidence of other crimes may be admissible under the integral act exception (formerly res gestae) when said crimes are related and intertwined with the charged offense to such an extent that the State could not have accurately presented its case without reference to the other crime. **Calloway**, 276 So.3d at 147. Such is not the case in this instance.

When balanced against the probative value of the evidence, I believe that allowing testimony referencing the fatality caused by the accident unduly prejudices the defendant. The State could have accurately presented its case against the defendant without referring to the fatality. However, the erroneous admission of other crimes evidence is a trial error subject to harmless-error analysis on appeal. The test for determining whether an error is harmless is whether the verdict actually rendered in this case "was surely unattributable to the error." **State v. Kirsh**, 2015-1856 (La. App. 1 Cir. 9/20/16), 273 So.3d 1225, 1233-34. I find that the other evidence presented by the State at trial clearly established the defendant's guilt such that the guilty verdict was surely unattributable to the testimony relating to the fatality. In other words, I find the error committed by the trial court to be harmless. Therefore, I concur in the result reached by the majority.